**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Andrew G. HARRIS, Defendant–Appellant.**

**No. 93CA0964.**

Colorado Court of Appeals, Div. IV.

June 29, 1995.

Rehearing Denied Aug. 3, 1995.

Certiorari Denied April 8, 1996.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Frances S. Brown, Chief Appellate Deputy State Public Defender, David M. Furman, James Grimaldi, Deputy State Public Defenders, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Andrew G. Harris, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of second degree kidnapping. He also challenges the court's denial of presentence confinement credit on his sentence. We affirm.

Defendant was charged with second degree kidnapping and aggravated robbery. According to the victim, late one night, defendant entered the victim's vehicle without permission and forced him at knifepoint to drive without headlights until a police officer noticed the lack of headlights and began pursuit. The victim then drove off the street onto a lawn and exited the vehicle. Defendant was apprehended shortly thereafter.

At trial, defendant testified that he and the victim had been involved in a drug transaction earlier that night which ended in a stabbing. He then testified that the victim had agreed to drive defendant out of the vicinity of the stabbing.

## I.

Defendant's first argument on appeal is that his statutory and constitutional speedy trial rights were violated. We do not agree.

## A.

On November 22, 1991, defendant was found incompetent to stand trial as to all of six criminal cases pending before the trial court and was ordered confined to the Colorado State Hospital in Pueblo until his competency was restored. In February 1992, the State Hospital filed a report with the trial court which indicated that defendant was competent.

On March 27, 1992, the court made a determination in three of the six cases that defendant had been restored to competency. The other cases, including this one, were not brought to the court's attention and thus were not included in that determination. A judicial determination of competency as to this case ultimately was entered on August 27, 1992.

### 1.

Defendant now contends that the trial court erred by excluding the time between the March 27, 1992, competency determination in the unrelated cases and the August 27, 1992, ruling on the competency issue in this case for purposes of calculating the relevant period under the speedy trial statute. We disagree.

According to § 16–8–113, C.R.S. (1986 Repl.Vol. 8A), once a defendant has been found incompetent, "[t]he court shall order a hearing if the head of an institution to which the defendant is committed files a report that the defendant is mentally competent to proceed or if a physician who has been treating the defendant files a report certifying that the defendant is mentally competent to proceed," and "[a]t the hearing, the court shall

determine whether the defendant is restored to competency."

"Any period during which the defendant is incompetent to stand trial" is excluded from the speedy trial computation. Section 18–1–405(6)(a), C.R.S. (1986 Repl.Vol. 8B); *see Coolbroth v. District Court*, 766 P.2d 670 (Colo. 1988).

■ Accordingly, the period excluded from the speedy trial computation under § 18–1–405(6)(a) does not end upon the filing of a report that a defendant is competent to proceed, but rather when the court makes a determination that the defendant is restored to competency. Here, that period did not end until such determination was entered by the trial court on August 27, 1992, well within the speedy trial period.

*People v. Deason*, 670 P.2d 792 (Colo.1983) and *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977), upon which defendant relies, are inapplicable to the situation here. Both cases involve sanity examinations, and for purposes of speedy trial calculations, periods in which sanity examinations are being conducted are not governed by the same statutory language as periods during which a defendant is incompetent.

■ Under § 18–1–405(6)(a), as then in effect, the period during which a defendant "is under observation or examination pursuant to a plea of not guilty by reason of insanity" is excluded. This period of observation or examination ends at the time the psychiatric report is filed and the court in *Deason* and *Renfrow* held accordingly.

In contrast, in its present form, § 18–1–405(6)(a), by its plain terms, excludes any period during which the defendant is incompetent. And, under § 16–8–113, the period of incompetency does not end until a judicial determination is made that defendant has been restored to competency.

For similar reasons, those cases in which there has been a delay during which a defendant is examined for competency and was found competent, are not germane to the issue here. In such cases, the period between the request for a competency examination and the receipt of psychiatric reports is not covered by § 18–1–405(6)(a). Nonetheless, this period of delay has been excluded as a delay attributable to the defendant under § 18–1–405(6)(f), C.R.S. (1986 Repl.Vol. 8B). *See Jones v. People*, 711 P.2d 1270 (Colo.1986). Again, this period of delay ends when the examination concludes. *See People v. Brown*, 44 Colo.App. 397, 622 P.2d 573 (1980); *cf.* § 18–1–405(6)(a), C.R.S. (1994 Cum.Supp.) (effective July 1, 1994, any period during which a defendant is "under observation or examination at any time after the issue of insanity, incompetency, or impaired mental condition is raised" is specifically excluded from speedy trial computation as well as any period during which the defendant is incompetent).

2.

Because the statutes deal with different subject matters and are not related, defendant contends that the meaning of "incompetent" as used in § 18–1–405(6)(a) is not dependent upon a judicial determination of restoration to competency as required in § 16–8–113. We are not persuaded.

■ According to §§ 16–8–112 and 16–8–114, C.R.S. (1986 Repl.Vol. 8A), a finding of incompetency results in the abatement of any proceedings requiring the presence and participation of the defendant. *See Parks v. Denver District Court*, 180 Colo. 202, 503 P.2d 1029 (1972); *Rupert v. People*, 156 Colo. 277, 398 P.2d 434 (1965); *see also* § 16–8–110(2)(a), C.R.S. (1986 Repl.Vol. 8A) ("If the judge has reason to believe that the defendant is incompetent to proceed, it is his duty to suspend the proceeding and determine the competency or incompetency of the defendant. . . .").

■ Trial or sentencing procedures do not resume unless the court has found the defendant has been restored to competency. *See* §§ 16–8–114(1) & 16–8–114(2), C.R.S. (1986 Repl.Vol. 8A); *Leick v. People*, 136 Colo. 535, 322 P.2d 674 (1958) (restoration to competency removes the statutory impediment and criminal proceedings take up at the point at which the incompetency arose).

■ Statutes pertaining to the same subject matter must be read *in pari materia* in

order to insure legislative intent is fulfilled and to avoid inconsistency. *Walgreen Co. v. Charnes,* 819 P.2d 1039 (Colo.1991). Here, §§ 16–8–112, 16–8–113, and 16–8–114 provide procedures which prevent the continuation of criminal proceedings during a period when a defendant has been found incompetent and is thus unable to attend or to participate meaningfully in his defense. *See* § 16–8–110(1), C.R.S. (1986 Repl.Vol. 8A) ("no person shall be tried, sentenced, or executed if he is incompetent to proceed at that stage of the proceedings against him").

Section 18–1–405(6), C.R.S. (1986 Repl.Vol. 8B) provides exceptions from the speedy trial computation to accommodate periods when the criminal proceedings are justifiably interrupted or suspended. *See* § 18–1–405(6)(b), C.R.S. (1986 Repl.Vol. 8B) (period of delay caused by an interlocutory appeal excluded); § 18–1–405(6)(d), C.R.S. (1986 Repl.Vol. 8B) (period of delay caused by the defendant's voluntary absence or unavailability excluded).

Because criminal proceedings are suspended during the entire time a defendant is incompetent and may not resume until a judicial determination is made that the defendant has been restored to competency, we perceive no basis upon which to find that the period in which a defendant is "incompetent" under § 18–1–405(6)(a) ends in any manner other than in accord with the procedures of § 16–8–113.

### 3.

■ Defendant argues, however, that because the meaning of the term "incompetent" is unclear, the rule of lenity requires us to interpret this ambiguous term in such a way as to exclude the shortest amount of time from speedy trial computation. We do not agree.

The rule of lenity may be employed only to resolve an unyielding statutory ambiguity, not to create one. *See People v. Forgey,* 770 P.2d 781 (Colo.1989); *Schubert v. People,* 698 P.2d 788 (Colo.1985). We perceive no unyielding ambiguity in the use of the term "incompetent" in § 18–1–405(6)(a). Thus, regardless of defendant's proposed alternative interpretation of the statute, the rule of leni-

ty does not apply. *See People v. Saucedo,* 796 P.2d 11 (Colo.App.1990).

### B.

■ The constitutional right to a speedy trial, derived from the Sixth Amendment and from Colo. Const. art. II, § 16, is distinct from the statutory speedy trial right and the determination as to one does not necessarily dispose of the other. *People v. Hogland,* 37 Colo.App. 34, 543 P.2d 1298 (1975). Therefore, we must consider whether, although defendant's trial was held within the statutory speedy trial period, his constitutional speedy trial rights were violated by the delay in entering a competency finding in this case.

■ The defendant bears the burden of establishing that there has been a constitutional speedy trial violation, under an *ad hoc* balancing test consisting of four factors: 1) the length of the delay; 2) the reasons for the delay; 3) the defendant's assertion of the speedy trial right; and 4) the prejudice to the defendant. *See Moody v. Corsentino,* 843 P.2d 1355 (Colo.1993); *People v. Bost,* 770 P.2d 1209 (Colo.1989).

■ A defendant must show prejudice relating to the fundamental interests that the speedy trial right was devised to promote. *See People v. Bost, supra; People v. Newman,* 867 P.2d 94 (Colo.App.1993) (prejudice may include, *inter alia,* the impact of the delay upon the ability to present a defense, upon the availability of evidence, and upon the cost of the proceedings).

■ However, the obvious prejudice of incarceration, in and of itself, is accorded relatively slight weight absent a showing that the defendant was thereby impaired in preparing a defense. *People v. Hogland, supra.*

■ Although the record reveals a significant delay between the date defendant was charged by information and the date he was brought to trial, most of that delay was either caused by or acquiesced in by defendant. Thus, we are concerned here only with the time between the submission of the physician's report indicating that defendant was restored to competency and the judicial find-

ing of competency in this case, a period of approximately six months.

Six months is not minimal. · Under the circumstances, however, it is not significant in comparison to the extended periods of delay caused by defendant's various requests for continuance, changes of counsel, and treatment for incompetency.

Neither does the record reveal any evidence suggesting that the failure to enter a finding of competency in this case was caused other than by neglect or oversight, as opposed to a deliberate effort to delay trial and thus undermine defendant's defendant's speedy trial right. *See Moody v. Corsentino, supra.*

Shortly after he was judicially declared competent to proceed in this case, defendant did assert that his speedy trial right had been violated. He has not, however, established any prejudice occurring because of this delay. According to the record, during that time he was incarcerated in five other pending criminal cases, at least one of which did not go to 'trial until just prior to the trial in this case. Defendant has not demonstrated that any evidence became unavailable, that any witnesses lost memory of the events, or that his defense was in any manner impaired. *See People v. Bost, supra.*

Thus, considering all the factors, we conclude that no violation of defendant's constitutional speedy trial rights occurred. *See Lucero v. People,* 173 Colo. 94, 476 P.2d 257 (1970) (speedy trial rights under United States and Colorado constitutions are congruent).

## II.

Defendant next argues that the trial court erred by refusing to declare a mistrial after the jurors sent out a note indicating that they were deadlocked. Additionally, he contends that the trial court erred by accepting a verdict from the jury after having announced its intention to declare a mistrial. We disagree as to both contentions.

## A.

After having previously sent out two notes indicating that the deliberations were dead-

locked, the jurors sent out a third note stating that they had made no progress and that they would like to adjourn. Over defense objections, the trial court brought the jury out and gave a "modified *Allen*" instruction.

Because the note was delivered by the jury late on a Friday afternoon, and because the jury had indicated earlier that it was deadlocked 11 to 1, defendant contends that this instruction was likely to have a coercive effect on the jury. Therefore, he argues that the trial court should have declared a mistrial at that time. We do not agree.

■ Upon receiving information that a jury cannot agree on a unanimous verdict, a trial court may not give an instruction with a potentially coercive effect, but may, in its discretion, give a "modified *Allen*" instruction. *See Allen v. People,* 660 P.2d 896 (Colo. 1983); *People v. Urrutia,* 893 P.2d 1338, 1344 (Colo.App.1994); *see also Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

The instruction given by the trial court was the equivalent in all material respects of the "modified *Allen*" instruction approved by the Colorado supreme court. *See Allen v. People, supra.* Thus, we perceive no potential for coercion in its use here.

■ We also reject defendant's proposition that a trial court is required to declare a mistrial any time a jury indicates it is deadlocked 11 to 1 late on a Friday evening. The decision whether to declare a mistrial on the basis of a deadlocked jury is within the sound discretion of the trial court, and such will not be disturbed on appeal absent a clear abuse of that discretion. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984); *People v. Urrutia, supra.*

■ Here, the jury was instructed that none of its members should surrender an honestly held opinion for the sake of reaching a verdict. In the absence of evidence to the contrary, we must presume that the jury followed this instruction. *See People v. Ibarra,* 849 P.2d 33 (Colo.1993); *People v. Moody,* 676 P.2d 691 (Colo.1984).

## B.

Just over an hour after the "modified *Allen*" instruction was given, in response to the trial court's inquiry, the jury indicated that it had not made any progress towards a unanimous verdict. The trial court then announced its intention to declare a mistrial and bring the jury in for final instruction.

Before the jury was brought in, however, the trial court received word that the jury had reached a verdict. Defendant objected to receiving these verdicts on the grounds that the trial court had already declared a mistrial.

After hearing argument on the issue, the trial court indicated it had been speaking prospectively concerning a mistrial. The trial court stated that it could not have declared a mistrial until it had inquired of the jury as to whether further deliberations would be fruitful.

The record supports the trial court's finding that no mistrial had been declared at the time that the jury indicated it had reached its verdicts. Therefore, the court acted properly in taking the jury verdicts.

## III.

Defendant next argues that he was deprived of a fair trial because of several instances of prosecutorial misconduct during opening statement and closing argument. Again, we are not persuaded.

First, defendant contends that, during opening statement, the prosecutor's references to the emotions of the victim and the victim's wife deprived defendant of a fair and impartial jury. We disagree.

An appellate court will not grant a new trial on the basis of prosecutorial misconduct unless the prejudice created thereby was so great as to result in a miscarriage of justice. *See Harris v. People,* 888 P.2d 259 (Colo.1995). Here, the substance of the prosecutor's comments was corroborated by testimony introduced without objection and did not expose the jury to any extraneous, prejudicial material.

We also disagree with defendant that during rebuttal closing argument the prosecutor made improper remarks and made improper use of an exhibit and that, accordingly, the trial court abused its discretion by failing to declare a mistrial.

During defense closing argument, counsel maintained that the fact that the passenger side door of the victim's vehicle was unlocked indicated that the victim must have consented to giving defendant a ride. During rebuttal closing, the prosecutor used an analogy involving a rape victim whose door had been unlocked and argued that an unlocked door is not evidence of consent.

Also during defense closing argument, counsel argued to the jury that the victim was not threatened by defendant's knife. During rebuttal closing, the prosecutor picked up the knife and, standing about ten feet from the jury box asked the jury, "Is this threatening enough to you?"

Contrary to defendant's assertions that these remarks and actions were inflammatory, we conclude that the analogy and the demonstrative use of the exhibit here were reasonable, albeit perhaps somewhat flamboyant, responses to the arguments raised by defense counsel. *See People v. Vialpando,* 804 P.2d 219 (Colo.App.1990). Further, the record supports the trial court's finding that the prosecutor neither lunged nor swung the knife at the jury. Thus, we perceive no abuse of discretion in the trial court's refusal to declare a mistrial on those grounds. *See People v. Abbott,* 690 P.2d 1263 (Colo.1984).

## IV.

Defendant also argues that his decision to testify was made as a result of an incomplete advisement given by the trial court and, thus, his right to remain silent was violated. Again, we are not persuaded.

## A.

During the advisement, the trial court specifically informed defendant, based on information supplied by the prosecution, that if he testified contrary to a statement he had made to a police officer, the prosecutor could

bring the officer in to testify that defendant had made the prior inconsistent statement.

In rebuttal to defendant's evidence, the prosecutor called a non-police witness who testified as to prior inconsistent statements made by defendant. Defendant objected to this witness' testimony on the basis that the prosecutor and the court had created the impression that statements to the police were the only prior statements which would be allowed to impeach him. He stated that he would not have chosen to testify otherwise.

■■■■■ A trial court must advise a defendant that the decision to testify is his alone, that no one can prevent him from testifying, and that, if he chooses to testify, he may be cross-examined. The trial court must also inform the defendant that, as part of cross-examination, prior felony convictions will be open to inquiry but may be considered by the jury only as they affect defendant's credibility. Finally, the defendant should be informed that he has the right not to testify and that the jury will be instructed as to that right if he chooses not to testify. *See People v. Curtis*, 681 P.2d 504 (Colo.1984). There is, however, no specific litany or formula as to this advisement. *See People v. Milton*, 864 P.2d 1097 (Colo.1993).

■■■■■ There is no requirement that the trial court inform a defendant of any specific impeachment testimony that may be offered against him. By doing so, here, the trial court went beyond the *Curtis* requirements. Our review of the advisement satisfies us that the trial court completely and thoroughly advised defendant as to all of the *Curtis* elements.

Moreover, the concern which prompted the court in *Curtis* to impose an on-the-record advisement requirement was that a defendant's desire to testify may be overwhelmed by defense counsel's good faith determination that such testimony would not be the most effective trial strategy. The same concern is not present when the defendant elects to waive the right against self-incrimination. Thus, that an on-the-record advisement may be defective is not dispositive when the defendant chooses to testify. *People v. Mozee*, 723 P.2d 117 (Colo.1986).

■■■ Hence, although an on-the-record advisement by the trial court is helpful in determining whether the right to remain silent has been knowingly, intelligently, and voluntarily waived, defense counsel continues to bear the burden of ensuring that a defendant has been advised of the benefits of remaining silent at trial and of the consequences of waiving that right. *People v. Drake*, 748 P.2d 1237 (Colo.1988).

Because the supreme court in *Mozee* and *Drake* has preserved this distinction, we may not expand the trial court's responsibilities under *Curtis* to include those which properly remain with defense counsel.

### B.

■■■ Defendant asserts that, nonetheless, even if the *Curtis* advisement was not technically defective, the prosecutor promised that the only impeachment evidence that would be used was the testimony of a police officer and defendant relied to his detriment on that promise by choosing to testify. Therefore, according to defendant, under *People v. Macrander*, 756 P.2d 356 (Colo.1988), the trial court should not have allowed the rebuttal testimony by a non-police witness.

We do not agree that the prosecutor's statement constitutes such a promise. The record shows that the prosecutor did not make any promises to defendant concerning impeachment evidence and did not even indicate that this was the *only* impeachment evidence he would present. Thus, *People v. Macrander, supra*, is inapposite, and we need not address whether it is applicable outside of the context of plea bargains.

### C.

■■■ Defendant further contends, however, that even if *Curtis* and *Macrander* are not controlling, he nonetheless was misled by the prosecutor's statement and that, therefore, the waiver of his right to remain silent was not knowing, intelligent, and voluntary. We disagree.

The record indicates that defense counsel was made aware of the substance and content of the witness' testimony prior to trial.

As noted by the trial court, the prosecutor's statement regarding the police witness did not create a legitimate expectation that this was the only impeachment evidence which could be used. Thus, defendant was not misled into waiving his right to remain silent at trial. *See People v. Mozee, supra; People v. Trujillo,* 860 P.2d 542 (Colo.App.1992).

## V.

Lastly, defendant contends that the trial court erred by refusing to award credit for presentence confinement on this case. We disagree.

As the trial court noted, there is no dispute that presentence confinement was credited against defendant's sentence in another, unrelated case. The trial court imposed the sentence here to run consecutively to the sentence in that other case.

"When consecutive sentences are imposed, crediting the period of presentence confinement against one of the sentences will assure the defendant full credit against the total term of imprisonment." *Schubert v. People, supra,* 698 P.2d at 795 (Colo.1985).

Defendant's reliance upon *People v. Nealous,* 703 P.2d 624 (Colo.App.1985) is misplaced. In that case, it appeared that the presentence confinement credit had been erroneously applied to the previous sentence. A division of this court held that the presentence confinement credit should be applied to the correct sentence and that the Department of Corrections could administratively correct the mistake and eliminate the duplication of credit. Here, it is undisputed that the presentence confinement credit was properly applied to the sentence in defendant's other case.

The judgment and sentence are affirmed.

MARQUEZ and KAPELKE, JJ., concur.