The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John WATSON, Defendant–Appellant.

No. 99CA0779.

Colorado Court of Appeals, Div. V.

Dec. 20, 2001.

Rehearing Denied Feb. 7, 2002.

Certiorari Denied Sept. 9, 2002.

Opinion by Judge CASEBOLT.

Defendant, John Watson, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree sexual assault. We affirm.

The victim and defendant spoke briefly while at a bar. At the end of the evening and apparently without invitation, defendant joined the victim and her roommates in a car. When the group arrived at the victim's home,

the victim ignored defendant and proceeded into the house. She put on her nightclothes, went to her bedroom, and fell asleep.

According to the prosecution's evidence, the victim awoke and discovered that defendant was attempting to have anal intercourse with her. Before the victim fully realized what was occurring, defendant began to have vaginal intercourse with her. Defendant appeared surprised to see that she was awake. The victim pushed defendant away, went into the bathroom, and discovered that her nightclothes had been removed. She spent the remainder of the evening in a different room and reported the sexual assault to the police later the next day.

At trial, the victim testified that she was taking prescribed antidepressants on the night of the assault and that she had consumed three beers and part of a mixed drink. The victim testified she was not intoxicated from the alcohol but had been sleeping and was in a "semicomatose" state before the sexual assault.

## I.

Defendant first argues that the trial court erred in denying his motion to suppress evidence allegedly obtained through violation of the Wiretapping and Eavesdropping Act, § 16–15–101 et seq., C.R.S.2001. We are not persuaded.

After the victim reported the assault to the police, she met with a detective and agreed to call defendant to ask him a series of scripted questions about what had occurred. Although the detective monitored the call and was able to hear portions of the conversation, the tape recording equipment malfunctioned and failed to record defendant's statements.

The trial court denied defendant's motion to suppress the contents of the telephone call. However, at trial, the prosecution did not introduce any evidence concerning the call. The jury first learned of the call, although not the substance of defendant's statements, when defense counsel elicited the information during cross-examination of the victim. Defense counsel again raised the issue of the call during direct examination of

defendant. The prosecution then cross-examined defendant concerning the statements he had made during the call.

The Wiretapping and Eavesdropping Act requires law enforcement officers to obtain orders of authorization before intercepting certain wire and oral communications, and the Act limits the particular offenses for which such orders may be issued. *See* § 16–15–102, C.R.S.2001.

In *People v. Morton*, 189 Colo. 198, 539 P.2d 1255 (1975), the supreme court held that the Act does not require suppression of intercepted communications if one party to the communication consented to the interception. The court explained that the Act is not a proscriptive statute and that suppression of "unlawfully" intercepted communications under § 16–15–102(10), C.R.S.2001, is therefore only appropriate if the interception violated the criminal statutes prohibiting wiretapping and eavesdropping, §§ 18–9–303, 18–9–304, C.R.S.2001. The court concluded that, because those criminal statutes do not make unlawful the interception of a communication where one party to the communication consents to the interception, the Act does not require suppression of such intercepted communications.

Defendant acknowledges that *Morton*, if applicable, forecloses his suppression claim. However, he argues that *Morton* was legislatively overruled by a 1991 amendment that removed the citation to the criminal wiretapping and eavesdropping statutes that was previously included in § 16–15–102(1). We disagree.

Before the 1991 amendment, the introductory clause to § 16–15–102(1) provided: "An ex parte order for wiretapping or eavesdropping, or both, as those offenses are described in sections 18–9–302 to 18–9–304, C.R.S. may be issued...." As amended, it now provides: "An ex parte order authorizing or approving the interception of any wire, oral, or electronic communication may be issued...." Colo. Sess. Laws 1991, ch. 81, § 16–15–102(1) at 433.

■ In *Morton*, the court relied on the criminal wiretapping and eavesdropping statutes as the basis for determining whether an

interception of a communication was unlawful under the Act, without making reference to the citation to those criminal statutes then contained in § 16–15–102(1). The 1991 amendment to the Act that removed the citation to the criminal wiretapping and eavesdropping statutes from the introductory clause of § 16–15–102(1) was not an alteration to a section of the Act upon which the *Morton* court based its holding. Accordingly, the *Morton* decision is still binding authority. We thus uphold the trial court's denial of defendant's motion seeking suppression of communications intercepted with the consent of the victim.

## II.

Defendant next contends the trial court erred by qualifying a psychologist as an expert witness regarding the psychological effects of drugs and alcohol and permitting him to give testimony concerning the victim's physiological condition on the night of the assault. We perceive no abuse of discretion in the trial court's rulings.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. CRE 702.

■ The focus of a Rule 702 inquiry is whether the scientific evidence proffered is both reliable and relevant. *People v. Shreck,* 22 P.3d 68 (Colo.2001). In determining whether the evidence is reliable, a trial court should consider (1) whether the scientific principles as to which the witness is testifying are reasonably reliable, and (2) whether the witness is qualified to opine on such matters. In determining whether the evidence is relevant, a trial court should consider whether the testimony would be useful to the jury. *People v. Shreck, supra.*

■ Whether opinion testimony is within a particular witness's expertise generally is a matter addressed to the sound discretion of the court. *People v. Gomez,* 632 P.2d 586, 593 (Colo.1981).

■ Trial courts possess broad discretion to allow testimony by expert witnesses in criminal cases. To establish that a court has abused its discretion, it must appear that the court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Williams,* 790 P.2d 796 (Colo.1990).

### A.

Concerning the expert's qualifications, the psychologist held a master's and a doctorate degree in educational psychology, with specialty areas in substance abuse treatment and diagnosis and treatment of alcoholism. He had gained extensive knowledge concerning the effects of alcohol and other drugs and interactions of such substances in the brain through his position as the director of a treatment center for alcohol and drug abuse. The prosecution offered him as an expert in substance abuse including alcohol and other drugs and their interaction.

Defense counsel objected to the expert's qualifications and his voir dire focused on the expert's lack of a medical degree and the lack of expertise concerning the manner in which drugs chemically interact within the body. Defense counsel continued his objection "with respect to any testimony regarding the chemical manner in which drugs react in the human body."

Over that objection, the trial court granted the prosecution's request to qualify the witness as an expert "in the field of alcohol and substance abuse counseling" who could "testify about the psychological effects of the interactions of drugs." The court ruled that the psychologist could not testify concerning "the chemical reaction or interactions of drugs and alcohol" but that he could describe "his clinical observations regarding the interactions of drugs." After further foundation, the court qualified the expert to testify to his clinical observation of people who use interacting drugs.

In his testimony, the psychologist stated that, based on his review of a transcript of the victim's testimony given at an earlier proceeding, it was his opinion that the victim was in a "semicomatose" state during the sexual assault that would not have been

caused by the amount of alcohol she said she had consumed or by the prescription medication she was taking. The psychologist further testified that a semicomatose state was more consistent with ingestion of a sedative or a barbiturate.

■ Contrary to defendant's contention, we cannot say that only a medical doctor could proffer such an opinion. This expert had sufficient education, background, knowledge, training, and experience to testify concerning the interactions of drugs and their effects on the brain.

Further, based on our review of the record, we cannot say that the trial court abused its discretion in qualifying the psychologist as an expert witness in the topics set forth above. Nor can we conclude that the court abused its discretion in determining that the witness had limited his testimony to topics within his area of expertise without giving opinions on subjects requiring expertise in medical science or toxicology.

### B.

■ Defendant argues the court failed to assess whether the expert testimony would assist the jury. We first note that he did not raise that objection in the trial court. Accordingly, review proceeds under the plain error standard. *See People v. Morrison*, 985 P.2d 1 (Colo.App.1999), *aff'd*, 19 P.3d 668 (Colo.2000). Thus, we may reverse the jury's determination of defendant's guilt only if we are convinced that the reception of the evidence so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment of conviction. *See Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ In determining usefulness, some of the factors a court may consider include the elements of the particular offense charged, the nature and extent of other evidence in the case, the expertise of the proposed witness, the sufficiency and extent of the foundational evidence upon which the witness's ultimate opinion is based, and the scope and content of the opinion itself. *See Lanari v. People*, 827 P.2d 495 (Colo.1992).

As pertinent here, to establish first degree sexual assault, the prosecution had to prove that defendant knowingly inflicted sexual intrusion or sexual penetration on the victim while the victim was physically helpless, the defendant knew the victim was physically helpless, and the victim did not consent. Section 18–3–402(1)(e), C.R.S.2001.

■ Here, defendant testified that the victim was intoxicated, but not so intoxicated as to be unable to consent to the contact. His theory was that she may have experienced a temporary alcohol blackout, and that she did not remember inviting him to her room or recall consenting. The victim denied consenting to any contact and denied drinking to excess. Hence, the expert's evidence was relevant to the elements of the offense at issue.

The scope and content of the opinions offered and the expertise of the witness were appropriate and well-established. The other evidence in the case tended to support either the defendant's version of events or the victim's. Therefore, the evidence was helpful.

Concerning the foundational evidence, defendant argues that the psychologist's review of the victim's transcribed testimony from an earlier trial was an improper and insufficient foundation for his testimony as an expert witness. We disagree.

■ The victim's prior testimony concerned the substances she ingested and described her psychological condition at the time of the assault. The expert could rely on this testimony in forming his opinion. *See* CRE 703 ("[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing"); *People v. Manier*, 184 Colo. 44, 49, 518 P.2d 811, 814 (1974)("the fact that the expert witness had not examined the accused does not necessarily disqualify him from expressing his opinion based upon a hypothetical question" but "such opinion must be based on facts in evidence").

Further, the expert testified that experts in his field reasonably relied upon such information. Thus, the opinion was appropriately grounded.

Accordingly, we find no error, plain or otherwise.

## C.

Defendant also argues that the prosecution improperly used the expert's testimony as a basis to suggest that defendant laced the victim's drink at some point during the evening with gamma hydroxybutyrate, the "date-rape" drug. We disagree.

As defendant asserts, the expert stated that he was unable to explain why the victim was in a semicomatose state and that "something else happened there ... such as the addition of another drug or substance." However, the prosecution did not ask what such a substance could be. Instead, the defense, on cross-examination, asked what other kind of drug in combination with alcohol might have had such an effect. The expert opined that a sleeping pill, a barbiturate, possibly a narcotic, or an analgesic painkiller could have had that effect.

On rebuttal, the prosecutor noted that defense counsel had asked what other drugs could contribute to a semicomatose state and queried whether "rohipnal or GHP [sic]" was that type of drug. The expert responded affirmatively.

Defendant did not object to this testimony; hence, plain error is again the appropriate standard of review. *See Wilson v. People, supra.*

■ The record contains no description or explanation of what "rohipnal or GHP" is. While defendant asserts that it is gamma hydroxybutyrate, which incapacitates the user, there is no indication that the jury was so informed or that the jurors would be likely to know, from common parlance, what those terms meant. Furthermore, contrary to defendant's suggestion, the trial court prevented the prosecution from using the psychologist's testimony as a basis for suggesting that defendant may have slipped such a substance into the victim's drink when it sustained defendant's objection in closing argument. Accordingly, we find no plain error.

Because we reject defendant's claim that the trial court erred in its evidentiary rulings, we also reject his related claim that the improper admission of this evidence violated his due process right to a fair trial.

## III.

Finally, defendant argues that the trial court erred by giving the deadlocked jurors a "modified-*Allen*" instruction and then submitting two of the prosecution's exhibits for their consideration. Here again, we conclude the court acted within its discretion.

■ Upon receiving information that a jury cannot agree on a verdict, a trial court may not give an instruction with a potentially coercive effect, but may, in its discretion, give a "modified-*Allen*" instruction. Such an instruction informs the jurors that: (1) jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment; (2) each juror must decide the case for himself or herself, but only after impartial consideration with fellow jurors; (3) in the course of deliberation, a juror should not hesitate to re-examine his or her own views and change an opinion if convinced it is erroneous; and (4) no juror should surrender an honest conviction as to the weight and effect of the acts solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict. *Allen v. People*, 660 P.2d 896, 898 (Colo. 1983); *see* CJI–Crim. 38:14 (1983).

■ A prerequisite to giving such a modified-*Allen* instruction is that the trial court inquire of the jurors whether further deliberations would be productive. *People v. Raglin*, 21 P.3d 419, 423 (Colo.App.2000). Although the trial court's inquiry should not be directed to determining how many jurors favor one verdict or the other, the fact that a jury makes an unsolicited disclosure of that information does not deprive a trial court of discretion to decide whether to give a modified-*Allen* instruction. *People v. Saltray*, 969 P.2d 729, 733 (Colo.App.1998)(no abuse of discretion where jurors revealed they were deadlocked nine to three in favor of conviction and trial court gave a modified-*Allen* instruction; this revelation did not establish coercion absent any showing that the jurors

ignored the instruction's admonition concerning how to break a deadlock without sacrificing honest convictions); *see also People v. Harris,* 914 P.2d 425, 432 (Colo.App.1995) (no abuse of discretion where trial court gave a modified-*Allen* instruction after jurors revealed, without solicitation, that they were deadlocked eleven to one in favor of an unspecified outcome).

Here, after several hours of deliberation, the jury foreperson informed the court that the jury was having difficulty reaching a unanimous verdict. The court directed the foreperson to communicate the difficulty to the court in writing. Approximately one hour later, the foreperson submitted a note to the court stating that the jurors were deadlocked eleven to one in favor of conviction. The court called the jury into the courtroom and asked the foreperson whether there was likelihood of progress toward a unanimous verdict. The foreperson stated that there was not. The court excused the jurors and conferred with counsel.

The court decided, over defendant's objection, to give the jurors a modified-*Allen* instruction. The court then brought the jurors back into the courtroom, read them the instruction, and informed them that the bailiff would check on their progress in approximately fifteen minutes.

When the bailiff went to check on the jurors, they informed her that they would soon be sending out a note. Twenty additional minutes passed without any further communication from the jurors. The court next directed the bailiff to ask the jurors whether they were deadlocked, whether they wanted to continue deliberating and, if so, whether they would rather order dinner and deliberate further that evening or adjourn for the evening and return the next day. Over defendant's objection, the court also granted the prosecution's request to have the bailiff provide the jurors with two trial exhibits depicting the floor plan of the victim's residence.

Shortly thereafter, the bailiff returned to the courtroom and stated that the jurors wanted to continue deliberating that evening but that they did not want to order dinner. Moments later, the jury returned its verdict finding defendant guilty as charged.

This record does not establish that the trial court abused its discretion. The trial court allowed the jurors to deliberate another hour after it learned that they were having difficulty reaching a verdict. Only then did the court ascertain that the jurors were deadlocked and give them a modified-*Allen* instruction. Although the trial court knew that the jurors' preliminary vote was eleven to one in favor of conviction, such knowledge does not establish that the instruction had a coercive effect. *See People v. Harris, supra.*

Nor will we presume juror coercion resulting from the trial court's decision to provide the deliberating jurors with two exhibits that had been admitted at trial but that were, apparently, inadvertently omitted from the packet of exhibits given to the jurors when they began deliberating. Likewise, we will not presume jury coercion merely because the deliberations occurred two days before Christmas; it is evident from the record that the jurors knew that an additional day for deliberations was available prior to the holiday. *See People v. Harris, supra,* 914 P.2d 425, 432 (refusing to presume coercion merely because the modified-*Allen* instruction was given to the jury late on a Friday afternoon).

The judgment is affirmed.

Judge KAPELKE and Judge VOGT concur.