25CA1425 Peo in Interest of SS 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1425
Weld County District Court No. 22JV128
Honorable W. Troy Hause, Judge

The People of the State of Colorado,

Appellee,

In the Interest of S.S. a Child,

and Concerning M.K.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lum and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Ainsley E. Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1 In this dependency and neglect proceeding, M.K. (mother) appeals the juvenile court's judgment allocating parental responsibilities for S.S. (the child) to Z.S. (father). We affirm.

## I. Background

¶ 2 In August 2022, following receipt of a referral raising concerns that the then-four-year-old child had been abused by father, the Weld County Department of Human Services entered into a safety plan with the family. The parents agreed that the child would remain in mother's care pending further assessment. The caseworker then determined that the allegations had previously been assessed and deemed unfounded. But because of the ongoing volatility in mother and father's relationship, they agreed to place the child with child's maternal grandparents.

¶ 3 In September 2022, the Department filed a petition in dependency or neglect alleging that the parents' unstable relationship negatively impacted the child's emotional wellbeing. Less than one month later, maternal grandparents notified the Department that they couldn't continue their kinship placement, and the Department placed the child with father. The child remained in father's care for the pendency of the case.

1

¶ 4     Approximately eight months after the Department filed the petition, mother entered a no-fault admission, and the juvenile court adjudicated the child dependent or neglected.  The court then adopted a treatment plan for mother requiring her to (1) maintain contact with the caseworker; (2) learn and use parenting skills to establish a healthy attachment with the child; (3) address her mental health problems; (4) maintain appropriate housing for the child; and (5) demonstrate the financial ability to provide for the child's basic needs.  In September 2023, after the Department received referrals reporting concerns about mother's substance use, the juvenile court adopted an amended treatment plan requiring mother to complete a substance abuse evaluation and submit to drug testing.

¶ 5     Subsequently, the child's guardian ad litem (GAL) moved to allocate parental responsibilities to father, and the Department and father joined in the request.  Almost three years after the Department filed the petition, the court allocated sole decision-making responsibility to father, named him the primary custodian, and accorded mother eight hours of supervised parenting time per week.

## II. Continuance

¶ 6 Mother contends that the juvenile court erred by denying her counsel's request for a continuance. We aren't persuaded.

### A. Applicable Law and Standard of Review

¶ 7 The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2025. Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency." *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 8 When, as in this case, a child is under six years old at the time a petition in dependency or neglect is filed, the expedited permanency planning (EPP) provisions of the Children's Code provide that a juvenile court can't grant a continuance unless the moving party establishes (1) good cause for the continuance and (2) that the continuance will serve the child's best interests. § 19-3-104, C.R.S. 2025.

¶ 9 We review the denial of a continuance for an abuse of discretion. *See C.S. v. People in Interest of I.S.*, 83 P.3d 627, 638

(Colo. 2004). We won't disturb the juvenile court's decision absent a showing that it was manifestly arbitrary, unreasonable, unfair, or based on a misapplication or misconstruction of the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

¶ 10 We review procedural due process claims de novo. *R.J.B.*, ¶ 26. But a parent isn't entitled to relief on a due process claim absent a showing of harm or prejudice. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).

## B. Additional Background

¶ 11 Two weeks before the allocation of parental responsibilities (APR) hearing — set for December 20, 2024 — mother filed a forthwith motion to continue based on the Department's alleged failure to provide requested discovery. The juvenile court granted the motion and continued the APR hearing to April 7, 2025.

¶ 12 Five days before the April hearing, mother filed a forthwith motion to resolve discovery disputes, alleging that the Department hadn't updated its prior disclosures and had objected to several of mother's propounded document requests. One day before the hearing, mother filed a motion in limine asking the court to exclude evidence of mother's drug test results.

4

¶ 13    Given the limited time between the filings and the start of the hearing, the juvenile court didn't rule on the motions prior to the hearing. Thus, at the start of the April hearing, the parties' attorneys argued these outstanding issues. At that time, mother's attorney requested a continuance or, if the court denied that request, a limitation on the Department's presentation of evidence to "the discovery that ha[d] been produced and that we had available to prepare for cross-examination." Mother's attorney also notified the court that, despite "diligent efforts," he had been unable to secure the testimony of the parent-child interactional (PCI) evaluator.

¶ 14    The juvenile court denied the requested continuance but clarified that if, during the hearing, mother's counsel demonstrated prejudice based on the lack of disclosure, the court would reconsider. The court also limited the Department's presentation of evidence to the records and reports disclosed to mother and accepted testimony regarding her drug test results only as a basis for the experts' opinions, not for the truth of the matter asserted.

¶ 15    Because mother's counsel hadn't finished presenting evidence by the end of the day on April 7, 2025, the court continued the

5

hearing to June 9, 2025.  Mother's counsel didn't call, or attempt to call, any additional witnesses on the second day.

## C.   Analysis

¶ 16     The juvenile court didn't abuse its discretion by limiting the presentation of evidence in lieu of granting mother's counsel's requested continuance.  *See C.S.*, 83 P.3d at 638.  The case had been open for over two-and-a-half years, the APR hearing had already been continued once, the EPP provisions applied, and mother's counsel didn't provide any reason for finding that a delay would serve the child's best interests.  *See* § 19-3-104.  The court's ruling reflects that it appropriately balanced the reasons for mother's attorney's request with the need to conclude the hearing in a timely manner.  *See R.J.B.*, ¶ 11; *People in Interest of T.E.M.*, 124 P.3d 905, 908 (Colo. App. 2005) ("In ruling on the motion [to continue], the trial court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency.").

¶ 17     Mother asserts that the court's denial of the requested continuance deprived her of a meaningful opportunity to be heard, thereby violating her right to due process, because it forced her to

proceed without rulings on her two pretrial motions, "critical" discovery from the Department, and expert witness testimony from the PCI evaluator.

¶ 18    First, mother's counsel's request for a continuance related only to the discovery dispute, not the motion in limine. *See People in Interest of V.W.*, 958 P.2d 1132, 1134 (Colo. App. 1998) (declining to address an argument raised for the first time on appeal). In any event, as noted above, the court ruled on both of the pretrial motions, limited the scope of the Department's evidence, and allowed mother's counsel to renew the continuance request upon a demonstration of prejudice. Mother's attorney's only assertion of prejudice during the APR hearing related to the Department's failure to disclose documentation of its conversations with the GAL. But mother doesn't explain how this information was relevant to the proceeding or might have changed its outcome. *J.A.S.*, 160 P.3d at 262.

¶ 19    Further, mother doesn't explain why she wasn't able to secure the PCI evaluator's appearance in the nine months between the setting of the initial APR hearing and the final day of the hearing. *See R.J.B.,* ¶ 35 (refusing to consider a "bald assertion" presented

"without argument or development").  And while mother generally asserts that the PCI evaluator would have revealed "discrepancies" in the caseworker's testimony about mother's treatment plan compliance and presented her observations and opinions about the child's best interests, mother's counsel didn't make any offer of proof or provide any specifics allowing us to discern how "the termination proceedings would have been affected in any appreciable way" by the PCI evaluator's testimony.  *E.B.*, ¶ 22 (citing *People in Interest of C.G.*, 885 P.2d 355, 358 (Colo. App. 1994)).

¶ 20     Because mother has failed to demonstrate any actual prejudice resulting from the juvenile court's orders, we conclude that her due process claim must fail.  *See J.A.S.*, 160 P.3d at 262.

### III.   Scope of Expert Testimony

¶ 21     Mother contends that the juvenile court erred by allowing the caseworker to testify beyond the scope of her expertise.  We disagree.

### A.   Applicable Law and Standard of Review

¶ 22     Once a witness is qualified as an expert, "the witness's expert opinion testimony must still be limited to the scope of his or her

8

expertise." *People v. McFee*, 2016 COA 97, ¶ 88. "Whether opinion testimony is within a particular witness's expertise generally is a matter addressed to the sound discretion of the court." *People v. Watson*, 53 P.3d 707, 711 (Colo. App. 2001). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misconstruction of the law. *E.B.*, ¶ 14.

## B. Analysis

¶ 23 The Department offered the caseworker as an expert in "child protection casework." Mother's counsel didn't object to her being qualified as an expert in "casework as it relates to identifying services" but asked for a "limitation on any opinions as it relates to any treatments that were associated with the treatment plan." Based on the caseworker's education and training experience, the court qualified her as an expert in child protection casework. The court also informed the parties' attorneys that if they believed the caseworker was providing an opinion outside of her expertise, it would address any objection at that time.

¶ 24 On appeal, mother doesn't contend that the caseworker lacked either the education or experience to testify in the area of "child

protection casework" or that the court abused its discretion by qualifying her as an expert in that area. Instead, she asserts that the juvenile court erred by refusing to limit the scope of the caseworker's testimony. Specifically, mother argues that because her individual therapist, qualified by the court as an expert in mental health treatment, testified that mother completed her therapeutic treatment objectives, the court erred by allowing the caseworker to testify regarding mother's "overall compliance with her treatment plan."

¶ 25 First mother's therapist and the caseworker had separate and distinct roles. The caseworker worked to rehabilitate mother and reunify the family by developing a treatment plan, making referrals, monitoring mother's overall treatment plan progress, and working to achieve permanency for the child. In contrast, as mother's treatment provider, her therapist focused on mother's specific therapeutic objectives — he lacked knowledge and expertise regarding mother's comprehensive treatment plan objectives and overall progress towards those objectives.

¶ 26 Moreover, in forming her opinion regarding mother's treatment plan progress, the caseworker acknowledged the report from

10

mother's therapist that mother had completed the therapy required by the treatment plan. Even so, the caseworker opined that mother hadn't successfully completed the treatment plan objective because she hadn't shown any meaningful behavioral changes. And this testimony, focusing on mother's treatment plan progress in relation to the child's needs, was squarely within her role as an expert in child protection casework.

¶ 27 Mother doesn't point us to any case law requiring a caseworker to agree with a treatment provider regarding a parent's treatment plan progress, describing the scope of an expert's testimony in child protection casework, or holding that such testimony may not include opinions about a parent's overall treatment plan compliance. And we are aware of none. Nor are we persuaded that the caseworker's testimony about mother's overall treatment plan compliance in this case exceeded the scope of her expertise.

¶ 28 Finally, to the extent mother asserts that her therapist was in a better position to opine about any meaningful behavioral change, it was within the juvenile court's sole province, as the fact finder, to

11

determine the weight and probative effect of the evidence. *See Reid v. Pyle*, 51 P.3d 1064, 1068 (Colo. App. 2002).

¶ 29    For these reasons, we conclude that the juvenile court didn't abuse its discretion by allowing the caseworker to testify about mother's overall treatment plan compliance.

## IV.    Allocation of Parental Responsibilities

¶ 30    Mother contends that, considering her treatment plan compliance, the juvenile court erred by allocating sole decision-making responsibilities to father and limiting her parenting time to eight supervised hours per week. We disagree.

### A.    Applicable Law and Standard of Review

¶ 31    The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities and addressing parenting time when it maintains jurisdiction in a case involving a dependent or neglected child. § 19-1-104(5)-(6), C.R.S. 2025.

¶ 32    When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing

procedures to serve the child's best interests. *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995). Therefore, if a court allocates parental responsibilities, it must do so in accordance with the child's best interests, focusing on the protection and safety of the child and not the parents' custodial interests. *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 33 Whether and on what terms an APR should be ordered are within the juvenile court's sound discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). When there is record support for the court's findings, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15.

## B. Analysis

¶ 34 In allocating parental responsibilities, the juvenile court found that mother didn't substantially comply with her treatment plan and had unresolved mental health and substance abuse problems which adversely affected her ability to parent the child. Finding

that the child would be emotionally endangered by unsupervised time with mother, the court granted mother eight hours of supervised parenting time per week.

¶ 35 The record supports the court's findings. Mother's mental health and substance abuse evaluator reported concerns about mother's substance use. And the family time supervisor described ongoing concerns with mother's inability to regulate her emotions during visits, which distressed the child.

¶ 36 Additionally, as discussed above, the caseworker testified that mother had not completed the substance use and mental health objectives of her treatment plan. The case was opened, in part, due to concerns that mother influenced the child to make abuse allegations against father. And after more than two-and-a-half years, mother continued to make "inappropriate comments" and exhibit "coaching-like" behavior during family time. For example, about one month before the hearing, mother told the child that she wanted to become a substitute teacher at the child's school so that she "could see [the child] whenever she wanted" and said that she would "kill whoever she need[ed] to so that she [could] see [the child]." The caseworker also observed that mother hadn't

demonstrated sobriety. For these reasons, the caseworker opined that unsupervised time with mother would endanger the child.

¶ 37 Even so, mother asserts that based on her treatment plan compliance, including the lack of safety concerns during her family time, consistent family time attendance, completion of her therapeutic treatment plan, and voluntary participation in ongoing individual therapy, the juvenile court erred by not ordering joint decision-making responsibility and an equal parenting time schedule. But this argument essentially asks us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we can't do. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. It is exclusively within the juvenile court's purview to resolve conflicting evidence. *B.R.D.*, ¶ 15; *see also A.J.L.*, 243 P.3d at 250 ("[I]t is important to defer to the [juvenile] court, particularly when it hears contradictory testimony on material issues . . . ."). And the juvenile court's weighing of the evidence led it to explicitly conclude that unsupervised contact with mother would be harmful to the child.

¶ 38 Moreover, a parent's treatment plan compliance is not determinative of how the court should allocate parental

responsibilities. *See People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011) (explaining that an APR must be determined in accordance with the child's best interests, and a finding of parental unfitness isn't required before allocating parental responsibilities for a dependent or neglected child). In entering its orders, the juvenile court focused on the child's best interests, giving paramount consideration to her emotional needs and conditions. *See H.K.W.*, ¶ 13.

¶ 39    We also reject mother's argument that the record doesn't support the APR order because there were "significant safety concerns" regarding father's ability to care for the child. To support this contention, mother relies on testimony from a hearing other than the APR hearing, which we don't consider. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1222 (Colo. App. 2008) (declining to consider evidence on appeal that a party failed to introduce at trial). And during the APR hearing, mother confirmed that she didn't have "any ongoing concerns" about father and the child.

¶ 40    In sum, the record supports the juvenile court's findings, and its APR based on those findings was neither a misapplication of the

law nor manifestly arbitrary, unreasonable, or unfair.  Accordingly, we don't see any error.  *See E.B.*, ¶ 14; *B.R.D.*, ¶ 15.

## V.    Disposition

¶ 41    The judgment is affirmed.

JUDGE LUM and JUDGE MEIRINK concur.