## No. 26948

### The People of the State of Colorado v. Calvin Renfrow

(564 P.2d 411)

Decided May 2, 1977.                                Rehearing denied June 6, 1977.

132

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, William G. Meyer, Deputy, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Douglas H. Brown, Deputy, Dorian Welch, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant appeals his convictions of rape, deviate sexual inter-course, and menacing and his sentencing as an habitual criminal. We affirm but remand for resentencing.

I.

The defendant first argues that the trial court erred in joining a charge of forcible rape occurring on March 24, 1973, with an unrelated deviate sexual intercourse charge committed on a different female on March 10, 1973, for purposes of trial on the sanity issue. He contends that he was erroneously prejudiced by (1) the admission of evidence of other crimes and (2) the sheer increase in the number of charges. The trial court submitted separate verdict forms to the jury for each incident and instructed the jury that it was to reach separate verdicts with regard to the incidents on March 10 and March 24. The defendant did not object to the trial of the two sanity issues in the same proceeding.

We do not agree with the defendant's contentions. While Crim.P. 8(a), 13 and 14 set forth requisites for joinder and severance of charges, those rules address the issue in regard to trials on the merits.

The defendant has not cited, and our research fails to disclose, any cases in support of his argument. Rather, the law of this state is that the trial on the sanity issue must be to a different jury than the trial on the merits. Colo. Sess. Laws 1972, ch. 44, 39-8-104 at 226.[1] We have previously stated that the reason for the bifurcation of the sanity and substantive issues is because of the different nature of the issues to be determined in the two proceedings. The purpose of a sanity trial is to resolve the issue of legal accountability while a trial on the substantive charge resolves the issue of guilt. *People v. King*, 181 Colo. 439, 510 P.2d 333 (1973). In particular, we have held that since the relevancy and effect of evidence of a past criminal record are different in a sanity trial than they would be in a trial on the merits, admission of such evidence in a sanity proceeding does not constitute error. *People v. Medina*, 185 Colo. 101, 521 P.2d 1257 (1973).

II.

The defendant next contends that the trial court erred in allowing the endorsement of two psychiatrists on the day of the sanity hearing. Although defense counsel objected to the endorsement, he did not at any time request a continuance. The court in fact stated that it would entertain

---

[1] Now section 16-8-104, C.R.S. 1973.

a motion for a continuance if, upon the defense counsel's conferring with the witnesses, he deemed a continuance to be necessary. The defense counsel's failure to request a continuance was fatal to his assignment of error. We have frequently held that a defendant must make a timely request for a continuance. *People v. Steele,* 193 Colo. 87, 563 P.2d 6 (1977); *People v. Bailey,* 191 Colo. 366, 552 P.2d 1014 (1976); *Reed v. People,* 171 Colo. 421, 467 P.2d 809 (1970); *Peppers v. People,* 166 Colo. 93, 441 P.2d 668 (1968); *Gorum v. People,* 137 Colo. 1, 320 P.2d 340 (1958). Absent such a request, this claim of procedural error was waived. *People v. Bailey, supra.*

## III.

The defendant's next assignment of error is that the trial court erred in denying his motion to dismiss for denial of his right to a speedy trial. The defendant pleaded not guilty by reason of insanity on August 17, 1973. Upon entry of that plea, the trial court committed the defendant to the state hospital for observation. The record is unclear as to when the defendant was actually released from the state hospital, although on September 24, 1973, he appeared in court with counsel, requested and was granted a continuance of all proceedings to October 4, 1973. At the September 24 appearance, the trial judge directed one of the examining psychiatrists to file a report with the court by October 4. At the sanity trial, the defendant was found to be sane, and the trial on the substantive offenses began on March 17, 1974.

Both the speedy trial statute and the applicable criminal rule require the trial court to discharge any defendant who is not brought to trial within six months of the entry of a plea of not guilty. Colo. Sess. Laws 1971, ch. 121, 40-1-505[2] at 398; Crim.P. 48(b). For purposes of the six-month period, however, section 6(a) and (f) of the statute and Crim.P. 48(b)(6)(I) and (VI) provide for exclusions of "any period during which the defendant . . . is under observation or examination pursuant to a plea of not guilty by reason of insanity . . ." and any "delay caused at the instance of the defendant."

The defendant here admits that the period of time from September 24 to October 4 was a delay caused at his instance. He argues, however, that only periods of *actual* observation should be excluded from the six-month period and states that he was under observation for only two weeks. Although the time that the defendant was in custody at the state hospital is disputed, we need not make that computation in the present case. We hold that when a defendant pleads not guilty by reason of insanity, the period from the time of commitment until the filing of the final psychiatric report, if filed within a reasonable time, is excludable for purposes of the six-

---

[2] Now section 18-1-405, C.R.S. 1973.

month period. The report here was filed within a reasonable time. Accordingly, the period from August 17, 1973, to October 4, 1973, must be excluded from the six-month period. Disregarding that period of time, the defendant's trial date of March 17, 1974, was well within the prescriptions of the statute and the criminal rule.

## IV.

The defendant complains that the victim's in-court identification of him was tainted by the trial court's ruling requiring the defendant to be present at an *in camera* hearing to suppress the identification. He argues that, since he was the only black man sitting at the counsel table, any later identification was inherently suggestive.

The complaining witness had previously identified the defendant by selecting his photograph from among hundreds of other photos of black men on one occasion and, on another occasion, by choosing his photo from twelve photos exhibited to her. The defendant does not attack the prior photo identifications, but asserts that the trial court's refusal to allow him to be absent during the suppression hearing was error.

■ Assuming *arguendo* that the defendant's presence at the suppression hearing was suggestive, we hold that the error, if any, was harmless. In *Glass v. People*, 177 Colo. 267, 493 P.2d 1347 (1972), we held that even if there has been a tainted confrontation, the witness may make an in-court identification if there is an independent source upon which to base such an identification. *See also People v. Bowen*, 176 Colo. 302, 490 P.2d 295 (1971). At trial, the complaining witness on two occasions described her encounter in detail with the defendant. The victim's encounter with the defendant on the night of the incident in itself was an adequate independent source upon which to base her in-court identification. The reliability of that identification is enhanced by the fact that, prior to the *in camera* hearing, she was twice able to pick out the defendant's photo from numerous photographs exhibited to her. *See Glass v. People, supra.* The in-court identification did not constitute reversible error.

## V.

■ The defendant claims that the trial court's ruling requiring him to exhibit a scar to the jury for purposes of identification constituted a violation of his fifth amendment privilege against self-incrimination.

We find no such constitutional infirmity. The privilege against self-incrimination protects the accused only from providing the state with evidence of a testimonial nature. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). *People v. Montoya*, 190 Colo. 11, 543 P.2d 514 (1975); *People v. Brown*, 174 Colo. 513, 485 P.2d 500 (1971); *Vigil v. People*, 134 Colo. 126, 300 P.2d 545 (1956); *People v. Shackelford*, 37 Colo. App. 317, 546 P.2d 964 (1976).

In the present case, the exhibition of the scar was for the sole purpose of corroborating the identity of the defendant and was not testimonial.

Consequently, the trial court did not err in directing the defendant to exhibit the scar to the jury.

## VI.

The defendant contends that the habitual criminal statute[3] is selectively employed and therefore constitutes a violation of his right to equal protection. He further argues that his sentence is unconstitutionally excessive in violation of his eighth amendment immunity from cruel and unusual punishment. In support of his argument, he offers a statistical analysis of the percentage of eligible multiple offenders who are sentenced under the habitual criminal statute.

In *People v. Bergstrom*, 190 Colo. 105, 544 P.2d 396 (1975), and *People v. Thomas*, 189 Colo. 490, 542 P.2d 387 (1975), we held that, absent a showing of discrimination based on an invidious classification, the selective use of the habitual criminal statute does not deny a defendant equal protection of the laws; nor does it constitute cruel or unusual punishment in violation of the eighth amendment. *See People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (1976). While the defendant's statistics show that only a small percentage of those subject to sentencing as habitual offenders are actually punished under the statute, the statistics fail to show selectivity based upon an invidious classification.

## VII.

The defendant's final assignment of error is that the trial court improperly instructed the jury that the defendant's conviction of larceny in Oklahoma could be treated as a felony under Colorado law. We have scrutinized the applicable instructions and find no error.

The trial court first instructed the jury[4] that a person 16 years of age could be convicted of a felony in both Colorado and Oklahoma. In the next instruction,[5] the court stated that both theft and larceny were felonies in Colorado at the time of the defendant's *alleged* convictions and that larceny was a felony in Oklahoma at the alleged time of his conviction there. The trial court did not usurp the jury's function. Rather, it determined questions of law which were strictly outside the province of the jury. The vital question of fact of whether the defendant actually had been previously convicted was properly left to the jury. *Swift v. People*, 174 Colo. 259, 488 P.2d 80 (1971).

---

[3] Colo. Sess. Laws 1972, ch. 44, 39-13-101 at 253. Now Section 16-13-101, C.R.S. 1973 (1976 Supp.).

[4] Instruction No. 11 states:
"Under the applicable laws of Colorado and Oklahoma at the time alleged in Count 5 of the Information, a person over the age of 16 years could properly be charged with and convicted of a Felony."

[5] Instruction No. 12 states:
"You are instructed that Theft, as charged in the 4th Count of the Information, and Larceny From A Person, as charged in the 5th Count of the Information, were felonies within the State of Colorado at the times as alleged in the Information.
"You are further instructed that Larceny From A Person was a felony in the state of Oklahoma at the time alleged in Count 5 of the Information."

Although the issue was not raised by the parties, we note that the provision for sentencing under the habitual criminal statute was amended by the 1976 legislature.[6] Accordingly, we remand the cause for resentencing pursuant to our decision in *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974). In all other respects, the judgment of the trial court is affirmed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.

---

[6] The last portion of section 16-13-101(1) previously stated that those adjudicated habitual criminals would be punished by confinement for "a term of not less than the longest term, nor more than three times the longest term prescribed upon a first conviction." That portion has been amended to state that adjudicated habitual criminals will be confined "for a term of not less than twenty-five years nor more than fifty years." Colo. Sess. Laws 1972, ch. 93, 16-13-101(1) at 548, section 16-13-101(1), C.R.S. 1973 (1976 Supp.).