**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Barry STATEN, Defendant-Appellant.**

**No. 85CA1711.**

Colorado Court of Appeals,
Div. II.

June 25, 1987.

Rehearing Denied July 30, 1987.

Certiorari Denied Dec. 14, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Tegtmeier & Sears, P.C., Mary G. Allen, Special Deputy State Public Defender, Colorado Springs, for defendant-appellant.

SMITH, Judge.

Defendant, Barry Staten, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated robbery. We affirm.

The robbery took place at a fast food restaurant and was witnessed by four employees. Prior to trial, one of these wit-

nesses, Davis, told defense investigators that he was unsure whether defendant was the perpetrator of the robbery. However, his testimony during trial was that he was "positive" of both his pretrial identification of defendant from a mug shot book, and his in-court identification. When asked to explain the statements he had made to defense investigators prior to trial, Davis stated that he had not wanted to be involved in this case, and that his father had told him to tell defense investigators "what you think you should tell them if you don't want to be involved in this case."

One of the other eyewitnesses, Brown, was able positively to identify defendant at trial; another, Amber, could only state that defendant resembled the robber; and the other was unable to identify defendant at all.

At the close of the prosecution's case, defense counsel moved for a continuance to allow additional time to locate Davis' father as a possible rebuttal witness. The trial court denied this request.

## I.

■ Defendant first argues that the trial court erred in denying his motion for a continuance because he was surprised by Davis' testimony at trial and needed additional time to locate Davis' father as a potential rebuttal witness. We find no merit in this argument.

The denial of a motion to continue is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. On appeal, the reviewing court should consider the totality of the circumstances surrounding the request. *People v. Dillon,* 633 P.2d 504 (Colo.App.1981).

Here, Davis testified at the suppression hearing, two days before trial, that his prior identification of defendant from the mug shot book was a positive one, and also that his in-court identification of defendant was positive. The defense was therefore aware before the trial began that Davis had changed his story but apparently made no effort at that time to ascertain the reason. Upon discovering at trial that Davis

had had the above conversation with his father, the only effort the defense made to locate the father was to attempt by telephone to reach him at home. They did not attempt to ascertain from Davis where his father could be located.

The trial court noted that the request was not made until Friday afternoon before a three-day weekend, that the jury had already heard substantially all of the evidence, and further that the defense efforts to contact Davis' father had not been such as were likely to produce results. The question of whether Davis' father could provide rebuttal testimony was speculative at best, and defendant had ample opportunities to impeach Davis with his prior inconsistent statements. We therefore hold that the trial court did not abuse its discretion in denying the continuance.

## II.

Defendant next argues that the trial court erred in denying his motion to suppress the identifications of Amber and Brown on the basis that they were the product of impermissibly suggestive procedures.

A defendant is denied his right to due process of law when an in-court identification is based on an out-of-court identification which is so unnecessarily suggestive as to render the in-court identification unreliable. *People v. Madonna,* 651 P.2d 378 (Colo.1982). The threshold question to be determined therefore is whether the totality of the circumstances reveals that the out-of-court identification procedures used were unnecessarily suggestive. If the trial court determines that they were not, then the identification is admissible without further inquiry. *People v. Suttles,* 685 P.2d 183 (Colo.1984); *People v. Martinez,* 734 P.2d 126 (Colo.App.1986).

■ Here, police showed Amber a photographic array of ten black males nine days after the robbery occurred. The trial court found that there was nothing about the photographic array or the procedures used by police that were so unduly suggestive as to create a substantial likelihood of irrepa-

rable misidentification. The record supports the trial court's findings and conclusion, and therefore, its ruling will not be overturned on appeal. *People v. Holden*, 703 P.2d 603 (Colo.App.1985).

■ Defendant also argues that Brown's identification testimony should be suppressed because, prior to the preliminary hearing, the deputy district attorney had told Brown that defendant's hair style might be different. Brown had not been involved in any pretrial identification procedures but was able positively to identify defendant at the preliminary hearing. The trial court found, and we agree, that this comment alone was not suggestive.

However, defendant argues that the preliminary hearing was itself unduly suggestive and amounted to a one-on-one showup.

■ While it is true that under some circumstances an in-court identification may constitute an impermissible one-on-one confrontation which is unnecessarily suggestive and conducive to irreparable mistaken identification, such confrontations are not *per se* violations of due process. The burden is placed on the People to establish by clear and convincing evidence that the in-court identification is not the product of an unduly suggestive confrontation, but is based upon the witness' independent observations of the defendant during the commission of the crime. The court must then decide whether the resulting identification is reliable under the totality of the circumstances surrounding the confrontation and, in doing so, must determine whether there is an independent basis for the in-court identification.

Five factors are to be considered: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the time which has elapsed between the crime and the confrontation. *People v. Walker*, 666 P.2d 113 (Colo.1983).

■ The trial court here did not determine whether there was an independent basis for the in-court identification, but rather found that defendant had requested the preliminary hearing and had neither requested a waiver of his appearance nor any type of procedure which would have counteracted the inherent suggestibility of the situation. Therefore, since defendant had created the situation of which he was complaining, the court based its ruling on whether or not there was any suggestion over and above that inherent whenever anyone testifies in court against a person and it is relatively obvious where the defendant is seated and what his status is. It found no such suggestion and denied defendant's motion to suppress Brown's in-court identification.

■ Under the tests set forth in *People v. Walker, supra*, we hold that the trial court did not use the correct standard in ruling on defendant's objection. However, based upon the other identification testimony presented at trial, we find this to have been harmless error. Crim.P. 52.

Defendant contends that Amber's in-court identifications were also tainted by the suggestiveness of the one-on-one confrontations which occurred at the pretrial hearings. This argument is without merit.

■ Prior to any in-court confrontations with defendant, Amber had selected defendant's picture from a non-suggestive photographic array and told police that he was one of two men in the array who closely resembled the person who had committed the robbery. Therefore, any subsequent confrontations with defendant would not have been suggestive and would not have been conducive to irreparable mistaken identification. *See People v. Walker, supra; cf. People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977).

■ The fact that Amber was not certain of his identification and chose two photos from the array goes to the weight of the identification testimony and does not serve to exclude it. *Cf. People v. Horne*, 619 P.2d 53 (Colo.1980).

### III.

Defendant, who is black, contends that his right to equal protection under the law was violated by the People's systematic exclusion of blacks from the jury. However, the record reveals no such systematic racially-based exclusion.

In *Batson v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court stated:

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."

It is initially presumed that the prosecutor has exercised premptory challenges on constitutionally permissible grounds, and the burden rests with defendant to rebut this presumption by demonstrating a prima facie case of purposeful discrimination. To establish such a case, the defendant must first demonstrate that he is a member of a cognizable racial group and that the State has exercised its preemptory challenges to remove members of his race from the jury venire. The defendant must show that, in light of all the relevant circumstances, there is an inference that the prosecutor used his peremptory challenges to exclude jurors because of their race. Once the defendant has made this prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging the jurors. *Batson v. Kentucky, supra;* *See Fields v. People*, 732 P.2d 1145 (Colo.1987).

There were thirty-five people on the jury panel, two of whom were black. The People used five peremptory challenges and excluded both of the blacks from the jury. By agreement of the parties, the voir dire examination was not recorded, but the trial court made a record of the fact that the daughter of one of the excluded black jurors was a personal friend of the only eyewitness in the case who was unable to make any identification of the person who committed the robbery. Defense counsel made a record that the other excluded

black juror seemed to be a person with limited educational background, had difficulty communicating, was extremely nervous, and did not respond adequately to the question of either counsel. The trial court essentially confirmed these conclusions and concluded that defendant had not established a prima facie case demonstrating that the peremptory challenges were used to strike jurors on the basis of group bias.

The trial court is in the best position to evaluate the circumstances surrounding the selection of a jury. Based on the limited record supplied to us on appeal, we conclude that the trial court correctly determined that defendant had failed to establish a prima facie case of unconstitutional discrimination in the use of peremptory challenges. *Cf. Fields v. People, supra.*

Accordingly, the judgment of the trial court is affirmed.

STERNBERG and BABCOCK, JJ., concur.