**Thomas YORK, Sr., Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2010–SC–000240–MR.

Supreme Court of Kentucky.

Sept. 22, 2011.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, John Paul Varo, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Luther Biggs was watching television at his home in Covington when he heard a knock at the door. He was greeted by three masked men. They pushed the door fully open and shoved Biggs back into the house. One of the men stabbed him in the chest with a knife and he fell to the floor. Another man kicked his head while the third man removed his pants.

Biggs recognized Appellant, Thomas York, Sr., by his voice. York grabbed Biggs and demanded money. Biggs responded that his only cash was in his wallet. After retrieving the wallet from Biggs' bedroom, York was unsatisfied and began poking Biggs with the knife. Biggs observed one of the masked men rummaging through a small bedroom, while another was ransacking the master bedroom. Eventually, the three intruders left the home, taking with them Biggs' prescription medication and $600 in cash.

Covington Police responded to the scene shortly after 10:00 p.m. Biggs identified York to the police, explaining that he recognized his unusual voice and short stature. York had recently been employed by Biggs, who owned a roofing company. The officers found a mask in the neigh-

bor's yard that evening. The following day, after returning home from the hospital, Biggs found a second mask in his bedroom.

York was arrested about three months later and charged with burglary in the first degree, robbery in the first degree, and being a persistent felony offender in the second degree. The case eventually proceeded to a jury trial. At trial, the defense denied that York was involved in the crime. York presented the testimony of his sister, who claimed that he was at her home on the night of the burglary. York was found guilty of all charges and sentenced to imprisonment for thirty years. He now appeals as a matter of right. Ky. Const. § 110(2)(b).

### Voice Identification

■ Because Biggs claimed to identify York during the burglary by his voice, the Commonwealth requested that York read a statement aloud before the jury. The statement was a threat that York made to Biggs during the robbery. Defense counsel objected, asserting York's Fifth Amendment right to remain silent. The trial court, comparing a voice sample to the taking of a blood sample or a fingerprint, ruled that the Commonwealth was entitled to have York speak in order for Biggs to identify his voice on the stand. However, the trial court ruled that York would not repeat the alleged threat, but instead speak a neutral phrase commonly used as a typing exercise.

■ The Fifth Amendment privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . ." *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "It does not extend to demonstrative, physical or real evidence." *Sholler v. Commonwealth*, 969 S.W.2d 706, 711 (Ky.1998) (no

Fifth Amendment violation where defendant was required to display his teeth to the jury). Thus, a distinction is drawn between compelling a defendant to exhibit his physical characteristics, as opposed to revealing any knowledge he might have. *U.S. v. Wade*, 388 U.S. 218, 222, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (finding no Fifth Amendment violation where the accused was required to utter certain words within the hearing of a witness during a pretrial lineup and that identification was later admitted at trial). Particular characteristics of a person's voice—such as tone, accents, or speech impediments—are physical characteristics. *U.S. v. Dionisio*, 410 U.S. 1, 7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

The Sixth Circuit has specifically approved of the method used by the trial court in this case. In *United States v. Williams*, 704 F.2d 315 (6th Cir.1983), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), the defendant was required to read to the jury a passage from *Time* magazine so that they could compare his voice to the description given by the prosecution witnesses. Because the characteristics of a person's voice—much like identifiable physical attributes—do not involve evidence that is testimonial in nature, the Sixth Circuit found no error. "The prescriptive parameters of compulsion to submit a live voice exemplar are products of evidentiary rules and judicial discretion rather than of constitutional dimension." *Id.* at 320. *See also* P.G. Guthrie, *Requiring Suspect or Defendant in Criminal Case to Demonstrate Voice for Purposes of Identification*, 24 A.L.R.3d 1261 (2011) (vast majority of jurisdictions find no Fifth Amendment violation, or other error, in compelling defendant to demonstrate his voice for identification purposes).

■ Accordingly, we conclude that York's Fifth Amendment rights were not violated where he was required to recite a neutral phrase before the jury, so that Biggs could make an in-court identification of his voice. On appeal, York further argues that the procedure used in his trial was unduly suggestive. This argument was not presented to the trial court and we have repeatedly stated that a party may not assert a different basis for an objection on appeal. *Fairrow v. Commonwealth,* 175 S.W.3d 601, 607 (Ky.2005). Recognizing this, York requests palpable error review. RCr 10.26.

■ A palpable error is one which affects the substantial rights of the defendant and results in manifest injustice. RCr 10.26. To effectively establish that an error was palpable, the party must show a "probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky.2006). Upon examination of the record, we find no indication of manifest injustice. York was not required to repeat the threat made to Biggs, but instead recited an innocuous, neutral phrase. The trial court thoroughly explained to the jury the purpose of the exercise. Finally, York had ample opportunity to cross-examine Biggs about the reliability of his identification. There was no error in requiring York to demonstrate his voice for the jury and, as such, no manifest injustice resulted.

## *Mistrial*

■ York claims that the trial court twice erred in denying his motions for a

mistrial. A mistrial is an "extreme remedy" of last resort and is appropriate only when there appears in the record a manifest necessity. *Bray v. Commonwealth,* 177 S.W.3d 741, 752 (Ky.2005) (overruled on other grounds by *Padgett v. Commonwealth,* 312 S.W.3d 336 (Ky.2010)). The central inquiry is whether either party's right to a fair trial has been infringed upon. *Graves v. Commonwealth,* 285 S.W.3d 734, 737 (Ky.2009). On appellate review, we review the trial court's decision for an abuse of discretion. *Bray v. Commonwealth,* 68 S.W.3d 375, 383 (Ky.2002).

## *Brown Testimony*

■ The first motion for a mistrial concerned DNA evidence. Human cells were collected from two masks that were found in and near Biggs' home and tested for DNA. The DNA results indicated that each of the masks contained cells from multiple individuals, and that York could not be excluded or included as a match.[1]

After two discussions concerning the relevancy of these test results, the trial court ultimately ruled that the DNA testing results were inadmissible, but not the fact that DNA testing had occurred because it was integral to the chain of custody of the evidence. The trial court further indicated that it would revisit the relevancy issue if defense counsel attempted to attack the quality or thoroughness of the police investigation. On appeal, York does not challenge this ruling.

The Commonwealth called Melissa Brown, a state crime lab technician. Pursuant to the trial court's ruling, the Com-

---

1. On appeal, York argues that the written DNA lab test results were not disclosed in pretrial discovery pursuant to RCr 7.24 and 7.26, though defense counsel was informed of the test results. This argument was not specifically presented to the trial court, nor is it expressly argued on appeal. Accordingly, despite York's extensive discussion of the alleged discovery violation, we consider it irrelevant to our consideration of his arguments concerning mistrial.

monwealth agreed to avoid any reference to the fact that Brown worked in the DNA lab. During direct examination, the Commonwealth asked Brown how certain items of evidence came into her possession. As to one item, she replied: "These are swabs that I took for DNA, so I didn't receive these. I made these."

Defense counsel objected, was overruled, and then moved for a mistrial. The trial court denied the motion, again explaining that the test results had been deemed inadmissible, not the fact that testing had been conducted. York now argues that the trial court should have granted a mistrial because the reference to DNA testing unduly prejudiced him.

These circumstances do not establish the need for the extraordinary remedy of a mistrial. Brown's very brief and isolated reference to a swab created for DNA testing did not taint the jury or unduly prejudice York. Further, this testimony did not fall outside the bounds of the trial court's ruling, which York did not directly challenge. The trial court did not abuse its discretion in denying the motion for a mistrial.

■ York further argues that a limiting instruction should have been delivered to the jury. A review of the record reveals that defense counsel asked for an admonition that the jury not draw inferences from the attorneys' objections. The trial court had already delivered this admonition to the jury at the outset of the trial. We see no abuse of discretion in the refusal to redeliver this admonition.

*Fogle Testimony*

The second motion for a mistrial was made during the penalty phase. Ken Fogle, a Division of Probation and Parole employee, testified about York's prior criminal record. His testimony contained two incorrect statements.

■ Fogle erroneously testified that York was convicted of fourth-degree assault for spousal abuse. Upon defense counsel's objection, the trial court admonished the jury that the conviction was actually for harassment and disorderly conduct. Later, Fogle read from another final judgment and stated that York was found guilty of first-degree burglary. Again, defense counsel objected and the jury was admonished that the conviction was actually for criminal trespassing.

During a bench conference following Fogle's testimony, defense counsel moved for a mistrial. The trial court denied the motion, opining that there were adequate safeguards with the admonitions to the jury. Further, due to Fogle's errors, the trial court agreed to redact the charges for which York was not convicted from the final judgments. Ultimately, however, the parties agreed not to publish copies of the final judgments to the jury, thus avoiding the redaction issue. Prior to submitting the case for deliberation, the trial judge again admonished the jury to disregard the incorrect portions of Fogle's testimony and to consider "only the crime(s) for which he ultimately pled guilty and was convicted."

Contrary to York's arguments on appeal, this situation is not analogous to *Perdue v. Commonwealth*, 916 S.W.2d 148 (Ky.1995). In *Perdue*, an appeal from the imposition of the death penalty, a circuit court clerk erroneously testified that the defendant had been previously convicted of four counts of murder. In fact, the defendant had pled guilty to four counts of second-degree manslaughter arising out of a vehicular homicide. Though the trial judge admonished the jury to disregard the error, we found that remedy inadequate:

By that time, appellant had been convicted of what may be the most heinous of all crimes, murder for hire, and the jury which was about to fix his punishment was informed that he had been previously charged with four counts of murder but had escaped with second degree manslaughter. Inevitably, such information would lead the jury to conclude, notwithstanding the court's inartful admonition to disregard any reference to murder, that appellant had previously escaped just punishment and motivate it to see that it did not happen again.

*Id.* at 165.

The circumstances of the present case are easily distinguishable. First, it must be emphasized that, in *Perdue*, the circuit court's incorrect testimony was not the sole error warranting reversal of the penalty phase. In fact, the trial court had erroneously combined the penalty phase and the truth-in-sentencing hearing. *Id.* at 164. Further, York had not been convicted of "the most heinous of all crimes," nor did his prior convictions involve murder charges. *See Taylor v. Commonwealth*, 987 S.W.2d 302, 306 (Ky.1998) ("*Perdue* is easily distinguishable from this case because Taylor did not receive the maximum penalty for either offense, and the situation is not one involving a heinous crime or the death penalty, as was the case in *Perdue*.").

We also consider York's lengthy criminal history, which included convictions for twenty-three separate offenses. This history included a conviction of fourth-degree assault for spousal abuse, as well as three theft counts. In light of this substantial criminal history, we are unable to conclude that the brief, though erroneous, reference to burglary and assault charges arising from spousal abuse unduly prejudiced York.

These circumstances do not warrant the granting of a motion for mistrial. The judge's admonitions adequately cured any prejudice resulting from Fogle's misstatements. *See Combs v. Commonwealth*, 198 S.W.3d 574, 581 (Ky.2006) ("A jury is presumed to follow an admonition to disregard evidence; thus, the admonition cures any error."). We have not been presented with sufficient indication that the jury was unable to follow the trial court's admonitions or that York was unduly prejudiced. The trial court did not abuse its discretion.

The judgment of the Kenton Circuit Court is affirmed.

All sitting. All concur.