2015 COA 38

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Ramon Anthony ORTEGA,**
**Defendant–Appellant.**

**Court of Appeals No. 12CA1340**

Colorado Court of Appeals,
Div. III.

Announced April 9, 2015

§ 24–51–1105, C.R.S.2012.

Cynthia H. Coffman, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Audrey E. Bianco, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

Opinion by JUDGE WEBB

¶ 1 Everyone agrees that the Fifth Amendment prohibits compelling a defendant's testimony, but does not preclude evidence of the defendant's physical characteristics. Still, where a trial court orders a defendant to speak solely for voice identification by the jury, does the procedure involve improper testimonial or proper physical evidence? And even if the identification involves only physical evidence, is the procedure impermissibly suggestive because the jury hears only the defendant's voice? These questions are unresolved in Colorado,

¶ 2 A jury convicted Ramon Anthony Ortega of distributing less than five pounds of marijuana. He appeals on two grounds.

First, by forcing him to provide a live voice exemplar to the jury, the trial court violated his constitutional rights against self-incrimination and to due process, and also admitted unfairly prejudicial evidence contrary to CRE 403. Second, by playing to the jury's concern about crime in the community during closing argument, the prosecutor committed misconduct. Because we conclude that the voice identification procedure was proper and the prosecutor's comments were harmless error, we affirm.

I. The Voice Identification Procedure Was Proper

A. Background

¶ 3 This case began at a public park, where an undercover police officer, who was wearing a wire, bought marijuana from a man. After the officer asked whether anyone sold cocaine at the park, the man replied: "Actually, they were here earlier but they were drunk." The officer then met with a detective, who had observed the transaction and recorded their conversation from her undercover car nearby, and described the man. The detective believed that the man was Ortega and produced Ortega's photograph. The officer agreed that the person in the photograph matched the seller.

¶ 4 Weeks later, Ortega was arrested. He did not testify but defended on the basis of misidentification and offered alibi evidence.

¶ 5 At trial, the prosecutor moved to have Ortega read either a "generic" statement or a statement that was audible from the detective's recording of the drug buy—portions of which were garbled—to "allow the jury the opportunity to match up the defendant's way of speaking with the person speaking on that recording." Defense counsel objected, arguing that the statement was "communicative in nature," "tantamount to a one-on-one show up identification," and "far outweighed by any probative value [sic]." The court overruled the objection, concluding that the statement was not "forced incrimination in violation of the Fifth Amendment," and the "unfair danger of unfair prejudice [wa]s minimal." It did not address the one-on-one confrontation issue.

¶ 6 Even so, the court offered to "explain [to the jury that it was] ordering Mr. Ortega to say th[e] sentence." But because defense counsel did not want to "draw[ ] undue attention to an implication that he d[id] not want to do it or he [wa]s fighting against doing it," the court agreed to only ask the People if they had any other witnesses. At the end of the prosecution's case, Ortega stayed at defense counsel's table and read the statement, "Actually, they were here earlier but they were drunk." Earlier, the entire recording had been played for the jury.

### B. Preservation and Standard of Review

¶ 7 Ortega preserved this issue by arguing that the procedure violated the right against self-incrimination, the right to due process, and CRE 403. Although the Attorney General argues that defense counsel did not preserve the due process argument, we conclude that her comparison "to a one-on-one show up identification" sufficiently "alert[ed] the trial court to the particular issue." *People v. Cordova*, 293 P.3d 114, 120 (Colo.App.2011).

¶ 8 We "defer to the trial court's findings of historical fact," *People v. Rabes*, 258 P.3d 937, 940 (Colo.App.2010), but review de novo Ortega's contention that the court "violated his privilege against self-incrimination," *People v. McBride*, 228 P.3d 216, 227 (Colo. App.2009). Relying on *People v. Davis*, 312 P.3d 193, 201 (Colo.App.2010), *aff'd*, 2013 CO 57, 310 P.3d 58, the Attorney General urges us to review the Fifth Amendment claim for an abuse of discretion. But because *Davis*, *id.* at 198, involved a prosecutor's references during cross-examination and closing arguments to defendant's post-arrest silence, we are not persuaded to depart from the general rule that "where constitutional rights are concerned," law application "is a matter for de novo appellate review," *People v. Matheny*, 46 P.3d 453, 462 (Colo.2002). This is especially so where, as here, the facts are undisputed. *People v. Valdez*, 969 P.2d 208, 211 (Colo.1998) ("When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to *de novo* review.").

¶ 9 Also, we defer to the trial court's factual findings but review de novo whether the court violated Ortega's right to due process by allowing an impermissibly suggestive identification procedure. *See United States v. Thompson*, 524 F.3d 1126, 1135 (10th Cir. 2008) ("We review de novo the constitutionality of identification procedures, but we review for clear error the factual basis for the district court's decision." (internal quotation marks omitted)); *cf. Bernal v. People*, 44 P.3d 184, 190 (Colo.2002) (reviewing the "constitutionality of pretrial identification procedures" as a mixed question of law and fact).

¶ 10 In contrast, "[a]bsent an abuse of discretion, the trial court's [CRE 403] ruling will not be disturbed on appeal." *People v. Rubanowitz*, 688 P.2d 231, 245–46 (Colo. 1984). Thus, "we will not overturn its ruling unless it is manifestly arbitrary, unreasonable, or unfair." *People v. Melillo*, 25 P.3d 769, 774 (Colo.2001).

### C. Right Against Self–Incrimination

¶ 11 Ortega first contends the trial court violated his Fifth Amendment right against self-incrimination when it required him to read the excerpt from the transcript of the drug buy. We reject this contention.

#### 1. Law

¶ 12 "The privilege against self-incrimination protects the accused only from providing the state with evidence of a testimonial nature." *People v. Renfrow*, 193 Colo. 131, 135, 564 P.2d 411, 414 (1977). But while "the privilege is a bar against compelling 'communications' or 'testimony,'" it provides no protection when the accused is "the source of real or physical evidence." *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *see Sandoval v. People*, 172 Colo. 383, 388, 473 P.2d 722, 724 (1970) (no protection against "a compulsion to exhibit physical characteristics").

#### 2. Application

¶ 13 To begin, Colorado cases cited by the parties as being controlling do not involve the precise question presented in this appeal—whether the voice exemplar provided

by Ortega was testimonial or physical evidence.

¶ 14 Based on *Serratore v. People,* 178 Colo. 341, 497 P.2d 1018 (1972), *disapproved of by People v. Ramirez,* 199 Colo. 367, 609 P.2d 616 (1980), Ortega argues that even if the voice exemplar was physical evidence, a trial court cannot force a defendant to perform any act at odds with his defense solely for the jury's benefit. In *Serratore,* the prosecutor required the defendant to reach above a line that the prosecutor had placed on a wall in the courtroom. *Id.* at 345–46, 497 P.2d at 1021. This demonstration showed that because the defendant was short, his explanation for his fingerprint atop a cabinet was physically impossible unless he had entered through a window above the cabinet—the prosecutor's burglary theory. *Id.*

¶ 15 The supreme court concluded that because the defendant "was being asked to participate in a contrived experiment or demonstration concerning his physical abilities to perform a particular act," with the purpose "to [c]ommunicate to the jury the defendant's physical abilities to perform an act that the prosecution believed him unable to perform," the demonstration violated his right against self-incrimination. *Id.* at 347, 497 P.2d at 1022. But unlike in *Serratore*—where the procedure forced the defendant to demonstrate that his theory was implausible—the voice identification procedure here only allowed the jury to compare Ortega's voice to the recording and then arrive at its own conclusion.

¶ 16 The Attorney General relies on *People v. Thatcher,* 638 P.2d 760 (Colo.1981), *superseded by rule as stated in People v. Dist. Court,* 790 P.2d 332 (Colo.1990), and *People v. Shackelford,* 37 Colo.App. 317, 546 P.2d 964 (1976). But these cases provide at most background.

¶ 17 In *Thatcher,* the court mentioned that a "defendant may be required to speak for identification purposes, and such compelled speech does not violate the constitutional privilege against self-incrimination." 638 P.2d at 771. But the issue before the court involved "the less dramatic procedure of having the victim testify as to her prior voice identification." *Id.*

¶ 18 In *Shackelford,* 37 Colo.App. at 320, 546 P.2d at 967, the trial court required the defendant to "repeat three sentences allegedly uttered by the perpetrator of the offenses" at trial for a witness's benefit. To be sure, the division's analysis contrasting demonstrative evidence with testimonial communications is informative. *Id.* at 320–21, 546 P.2d at 967–68. But as Ortega points out, the procedure in *Shackelford* did not solely "demonstrate to the jury that it was [the defendant's] voice heard on the recording, and therefore that he was guilty of the offense charged."

¶ 19 The Attorney General also cites Colorado cases upholding in-court identification procedures compelling defendants to reveal physical attributes to the jury. *See, e.g., Renfrow,* 193 Colo. at 135, 564 P.2d at 414 (no Fifth Amendment violation where "exhibition of the scar was for the sole purpose of corroborating the identity of the defendant and was not testimonial"); *LaBlanc v. People,* 161 Colo. 274, 277, 421 P.2d 474, 476 (1966) (no Fifth Amendment violation where trial court compelled the defendant "to expose to the jury the arm bearing the tattoo" described by a police officer beforehand). These cases only frame the issue that must be decided—was the voice exemplar Ortega provided more like the demonstration in *Serratore* or a mere display of a physical attribute, as in *Renfrow* and *LaBlanc* ?

¶ 20 With only a few Colorado cases for guidance, we turn to decisions from other jurisdictions. *See People v. Clemens,* 2013 COA 162, ¶ 15, ―― P.3d ―― (considering cases from other jurisdictions "[b]ecause no Colorado case has addressed" the issue).

¶ 21 In many federal courts and some other states, "[i]t is well-settled that requiring a defendant to provide a voice exemplar for purposes of identification" by a witness does not violate the Fifth Amendment. *United States v. Flanagan,* 34 F.3d 949, 953 (10th Cir.1994). Fewer cases have addressed compelling the exemplar solely for the jury's benefit. But the cases to have done so suggest that no Fifth Amendment violation occurs.

¶ 22 In *United States v. Williams*, 704 F.2d 315, 317 (6th Cir.1983), after a defense witness "described [the offender's] voice on the telephone as a 'distinctive ... gravelly-type voice' with a Southern drawl," the prosecution had the defendant read a passage from a magazine as rebuttal evidence "for the purposes of the jury hearing his voice." (Internal quotation marks omitted.) In deciding "whether a defendant may be compelled to articulate in the presence of the jury to demonstrate his speech and voice characteristics for comparative purposes," *id.* at 318, the court relied on Supreme Court decisions recognizing "that the distinctive resonance, speech and voice idiosyncrasies of an individual are identifiable *physical* characteristics, the compelled demonstration of which infringes no interest protected by the privilege against compulsory self-incrimination," *id.* at 317. The court also rejected the defendant's distinction " 'between in-court demonstrations for the benefit of witnesses and those conducted for the benefit of the jury,' " as without " 'relevance to the issue of self-incrimination, since in both instances the jury observes the demonstration.' " *Id.* at 319 (quoting *United States v. Turner*, 472 F.2d 958, 959 (4th Cir.1973)).

¶ 23 In *United States v. Leone*, 823 F.2d 246, 249 (8th Cir.1987), police officers had taped telephone conversations between drug suspects. When one of the suspects arrived, an undercover officer who saw the defendant and heard him speak testified that the defendant's voice matched the voice on the phone. *Id.* Later in the trial, the court ordered the defendant to "speak certain words connected with the identification testimony so that the jury could compare his voice with the voice on the tape." *Id.* at 250.

¶ 24 In rejecting the Fifth Amendment claim, the *Leone* court concluded that "[i]t strain[ed] credulity to argue that uttering the phrases: 'About an hour,' 'I took the phone off the hook, one of them,' and 'I did,' which [we]re totally void of any incriminatory content, amount[ed] to an admission of guilt." *Id.*; *see also State v. Morton*, 684 S.W.2d 601, 606 (Mo.Ct.App.1985) (upholding a procedure requiring the defendant to read from a Mark Twain novel "so the jury w[ould] have a sample of what the defendant's voice sound[ed] like" (internal quotation marks omitted)).

¶ 25 For three reasons, the analysis in these cases is persuasive.

¶ 26 First, Ortega cites no contrary authority.

¶ 27 Second, courts have generally approved of non-communicative demonstrations that enable a witness to identify a voice even when they occur in the jury's presence. *See Williams*, 704 F.2d at 319 (Courts "have universally adjudged that compelling a defendant to actively cooperate in non-communicative activity in the presence of the jury does not abdicate fifth amendment guarantees."). Thus, because "in both instances the jury observes the demonstration," *id.* (internal quotation marks omitted), we do not discern any principled difference between an in-court demonstration for a witness's benefit and one conducted for the jury's benefit. This observation undercuts Ortega's distinction of *Shackelford*.

¶ 28 Third, we discern no meaningful distinction between a person's voice and any other physical characteristic. As explained in *Gilbert v. California*, 388 U.S. 263, 266–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967):

One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection.

Thus, because the "prohibition against self-incrimination ... does not exclude one's body as evidence," *LaBlanc*, 161 Colo. at 277, 421 P.2d at 476, the Fifth Amendment does not protect "[p]articular characteristics of a person's voice," such as "tone, accents, or speech impediments," *York v. Commonwealth*, 353 S.W.3d 603, 606 (Ky.2011).

¶ 29 Ortega's emphasis on the demonstration being the only time that the jury heard his voice fails to explain why we should not apply this physical characteristic analysis.

After all, in such cases the jury observes the characteristic—whether scar, tattoo, or voice—only once.

¶ 30 Therefore, because Ortega was compelled only to participate in a non-communicative demonstration revealing the qualities of his voice, we conclude that the procedure did not violate his right against self-incrimination.

### D.  Right to Due Process

■ ¶ 31 Ortega next contends the in-court voice identification procedure constituted an impermissible one-on-one confrontation that was unnecessarily suggestive, thereby violating his right to due process. We also reject this contention.

### 1.  Law

¶ 32 "[U]nder some circumstances an in-court identification may constitute an impermissible one-on-one confrontation which is unnecessarily suggestive and conducive to irreparable mistaken identification." *People v. Walker*, 666 P.2d 113, 119 (Colo.1983) (reviewing but upholding trial court's denial of motion to suppress in-court identification of the defendant by a witness during in camera hearing). "One-on-one confrontations are viewed with disfavor because they tend to be suggestive and present greater risks of mistaken identification than a line-up." *Id.* Even so, such confrontations are not per se violations of due process. *Id.* Rather, "[i]n considering a claim that the identification procedures used violated due process, the court must decide whether the resulting identification is reliable under the totality of the circumstances surrounding the confrontation." *Id.*

### 2.  Application

¶ 33 Ortega analogizes the procedure of the jury hearing only his voice—with no other voices to compare with the recording—to a one-on-one confrontation that created a substantial likelihood of irreparable misidentification. For three reasons, this analogy is flawed.

¶ 34 First, Ortega cites no authority—nor have we found any in Colorado—precluding an in-court identification not based on a disputed pretrial confrontation as an impermissible one-on-one confrontation.[1] To the contrary, in *People v. Monroe*, 925 P.2d 767, 774 (Colo.1996), the supreme court discerned no error in an in camera hearing at which a witness confronted the defendant, whom the witness was identifying for the first time. The *Monroe* court also rejected an independent source requirement for such in-court identifications. *Id.*

¶ 35 Second, an in-court identification not derived from an earlier out-of-court confrontation involves "different considerations." *Thompson*, 524 F.3d at 1135 (internal quotation marks omitted). Unlike an in-court identification based on a witness's prior confrontation, an in-court identification by the jury does not risk spillover from a prior confrontation. *See United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir.1986) ("The concern with in-court identification where there has been suggestive pre-trial identification is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pre-trial identification."). Instead, the jury is acting as an independent fact finder. *See United States v. Curtis*, 344 F.3d 1057, 1063 (10th Cir.2003) ("Defendant's displaying of his teeth simply allowed the jury to make its own comparison between the description given by the two witnesses and Defendant's actual appearance.").

¶ 36 Third, Ortega's challenge that impermissible suggestion occurred because the jury heard only his voice could be made to any procedure in which the jury observes only a physical characteristic of the defendant—such as a scar or tattoo—but is not shown other persons with similar characteristics for comparison. Yet, as discussed above, such procedures have been uniformly upheld. *See, e.g., Renfrow*, 193 Colo. at 135, 564 P.2d at 414; *LaBlanc*, 161 Colo. at 277, 421 P.2d

---

1. Instead, Ortega relies on cases involving in-court identification procedures that allegedly were tainted by suggestive pretrial identification.

*Bernal v. People*, 44 P.3d 184, 191 (Colo.2002); *People v. Smith*, 620 P.2d 232, 237 (Colo.1980).

at 476; *see also People v. Sims,* 64 Cal. App.3d 544, 134 Cal.Rptr. 566, 571 (1976) (upholding procedure requiring defendant to read seven statements allegedly made by the assailant, after which the victim testified that the voice belonged to her attacker, because the "voice is merely another identifying physical characteristic" (internal quotation marks omitted)).

¶ 37 But suppose the voice identification may have been somewhat suggestive. Defense counsel could have proposed procedures "to forestall suggestiveness in the course of the in-court identification." *Monroe,* 925 P.2d at 774. For example, counsel could have suggested that the jury hear other persons reading the same words, as Ortega argues for the first time on appeal. *See id.* (collecting cases). Counsel made no suggestions.

¶ 38 In any event, one-on-one confrontations occurring in court have been upheld where the "identification [wa]s reliable under the totality of the circumstances surrounding the confrontation." *Walker,* 666 P.2d at 119. *Walker* ultimately upheld an in-court one-on-one confrontation because the trial court had "concluded that there was an independent basis for the in-court identification." *Id.* at 120 (noting that the court had considered the witness's prior opportunity to observe the defendant and her "cool demeanor" as the crime occurred).

¶ 39 Here, although the jurors had not seen or heard Ortega before trial, they listened to the officer's and detective's testimony describing their out-of-court identifications of Ortega. This testimony gave them "an independent basis" for identifying Ortega as the seller. Therefore, we conclude that the totality of the circumstances indicates that the identification procedure did not violate due process.[2]

**2.** Citing *United States v. Thompson,* 524 F.3d 1126, 1136 (10th Cir.2008), Ortega points out that the Tenth Circuit, in upholding a one-on-one confrontation, noted that the trial court had given a cautionary instruction. But because Ortega rejected the court's offer to instruct the jury that it was compelling the defendant to make the statement and he did not request any other clarifying instructions, he waived the right to argue on appeal that the court should have

### E. CRE 403

¶ 40 Asserting that the in-court identification procedure was more prejudicial than probative, Ortega contends it violated CRE 403. Again, we are not persuaded.

#### 1. Law

¶ 41 "Even relevant evidence is excludable if it is unfairly prejudicial, that is, if it has an undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. Brown,* 313 P.3d 608, 615 (Colo.App.2011) (internal quotation marks omitted). To be excludable, however, "the danger of unfair prejudice must substantially outweigh the legitimate probative value of the evidence." *Id.* "CRE 403 strongly favors admissibility of relevant evidence," and "the balance should generally be struck in favor of admission when evidence indicates a close relationship to the event charged." *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995) (internal quotation marks omitted). Thus, "an appellate court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *Id.*

#### 2. Application

¶ 42 Ortega argues that the "prosecution sought to inflame the jury's indignation regarding the alleged 'drug market'" in the public park. He asserts that "rather than requesting that he recite an innocuous sentence," the prosecution impermissibly required him to reveal his familiarity with the "more serious drug dealing in the park."

¶ 43 The court "[found] it probative that the jury c[ould] compare what they hear[d]

given cautionary instructions. *See Martinez v. People,* 177 Colo. 272, 276, 493 P.2d 1350, 1352 (1972) (Where the "trial court offered to instruct the jury on the limited purpose for which the evidence was to be received, and specifically inquired of counsel if he wished such an instruction," and counsel refused, and "did not thereafter request any instruction limiting the evidence," the defendant waived the limiting instruction.).

as Mr. Ortega's voice in open court with the voice that [wa]s on th[e] tape." Ortega does not argue otherwise. Instead, he disputes the court's conclusion that the evidence was not unfairly prejudicial because "you can hear basically one sentence from Mr. Ortega—from whoever is on the tape,. that the detective has already identified as Mr. Ortega."

¶ 44 True, as Ortega argues, the better practice would have been to require that he read a completely neutral passage, rather than the marijuana seller's statement. *See, e.g., Williams,* 704 F.2d at 317 (requiring defendant to read from *Time* magazine); *Morton,* 684 S.W.2d at 605 (instructing defendant to read from Mark Twain novel). And there "may be situations where forcing a criminal defendant to utter the words of the crime would be so inherently prejudicial that a conviction would warrant reversal." *State v. Hubanks,* 173 Wis.2d 1, 496 N.W.2d 96, 101 n.8 (Wis.Ct.App.1992).

¶ 45 But the statement that Ortega read was unconnected to the marijuana sale. And when the prosecutor initially proposed the procedure, he mentioned the alternative of using a "generic statement." Still, defense counsel did not ask the court to use a neutral statement rather than an excerpt from the recording.

¶ 46 For these reasons, we conclude that the trial court's determination that the voice exemplar posed a minimal risk of unfair prejudice was not "manifestly arbitrary, unreasonable, or unfair." *Melillo,* 25 P.3d at 773.

## II. The Prosecutor's Improper Comments During Closing Arguments Do Not Require Reversal

¶ 47 Finally, Ortega contends the prosecutor's comments during closing argument denied him a fair trial. We discern no reversible error.

### A. Background

¶ 48 During closing arguments, the prosecutor said: "Now, one of my problems in this case is getting you, the jury, to care about this." Defense counsel objected, arguing "[t]here is a specific instruction that the jury

is not to consider emotions. The District Attorney's burden is proof beyond a reasonable doubt." After the court overruled the objection, the prosecutor continued:

I have to get you to care. Why should you care about this crime? This isn't a robbery. This isn't a homicide. Why should you care? You should care for this city. We do not want an open drug market in Acacia Park right in the heart of Colorado Springs. We do not want an open drug market directly across the street from Palmer High School. We want people to have jobs and to be productive members of society. We don't want them to be drug dealers.

Now, this is marijuana. I am not going to ask you to care about marijuana. Care about the laws of this state that say distribution of marijuana is illegal. Care about the laws of this state and find the defendant guilty.

### B. Preservation and Standard of Review

¶ 49 The Attorney General concedes preservation of this issue.

¶ 50 In prosecutorial misconduct claims, "the reviewing court engages in a two-step analysis." *Wend v. People,* 235 P.3d 1089, 1096 (Colo.2010). First, we "determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* Because "[w]hether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion," *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005), "we will not disturb [the court's] ruling[ ] .... in the absence of a showing of gross abuse of discretion resulting in prejudice and a denial of justice," *People v. Strock,* 252 P.3d 1148, 1152 (Colo.App.2010). Second, we decide "whether such actions warrant reversal according to the proper standard of review." *Wend,* 235 P.3d at 1096.

¶ 51 Ortega's assertion that we must review this claim for constitutional harmless error is unsupported. *See Crider v. People,* 186 P.3d 39, 42 (Colo.2008) ("[E]xceeding less well-defined ethical boundaries by threatening to mislead a jury with expressions of

personal opinion or inflammatory comments is broadly accepted as being subject to the discretion of the trial court, which does not rise to the level of constitutional error."). Instead, we review for non-constitutional harmless error. *Id.* "[E]ven properly objected-to trial error will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction." *Id.*

### C. Law

¶ 52 "[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo-Gomez,* 125 P.3d at 1048 (internal quotation marks omitted). "In closing argument, [a prosecutor] may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance," *People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003), but cannot "inflame and appeal to the jury's passions or prejudices," *People v. Walters,* 148 P.3d 331, 334 (Colo. App.2006). Although "a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence," the prosecutor "must stay within the limits of appropriate prosecutorial advocacy during closing arguments." *Id.* We evaluate prosecutorial misconduct claims "in the context of the argument as a whole and in light of the evidence." *People v. Gutierrez,* 622 P.2d 547, 554 (Colo. 1981).

### D. Application

¶ 53 Ortega argues that the prosecutor's comments "appealed to the jurors' fears and concerns for public safety," thus denying him a fair trial. Because the park's proximity to the high school was not relevant to any element of the offense, he asserts that the prosecutor intended to "call to the mind of the jurors the image of young teenagers" becoming involved in the drug trade.

¶ 54 The Attorney General responds by characterizing the statements as "rhetorical comment[s] reflecting on the nature of the charges and the evidence presented." But this characterization cannot avoid the widely-cited principle that a "prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking." *United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir.1984). Therefore, "[w]e agree with defendant that the prosecutor's [comments] w[ere] an improper attempt to persuade the jurors to convict defendant in order to combat evil for the community." *People v. Clemons,* 89 P.3d 479, 483 (Colo.App.2003) (Paraphrasing famous Burke statement that "the only thing necessary for the triumph of evil is for good men to stand by and do nothing" was improper.).

¶ 55 Still, because this comment "was an isolated incident in an otherwise proper closing argument," we conclude that the error was harmless. *See id.* (harmless error even though prosecutor improperly appealed to jury's duty to fight evil in the community). Because two witnesses identified Ortega and the jury was instructed to apply the rules of law to the evidence presented at trial, we discern no "reasonable probability that [any error] contributed to the defendant's conviction." *Crider,* 186 P.3d at 42.

### III. Conclusion

¶ 56 The judgment of conviction is affirmed.

JUDGE DAILEY and JUDGE RICHMAN concur.